Bock, Assignee, etc., *v.* Perkins, U. S. Marshal, and others.

*(Circuit Court, N. D. Iowa, E. D.* May 15, 1886.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—DESCRIPTION OF PROPERTY.

A deed of assignment, intended for the benefit of all creditors generally, but which describes the property conveyed as "all the property whatsoever of the party of the first part, more particularly described in the annexed schedule," is, in legal effect, not a general, but a partial, assignment, and conveys only the property enumerated in the schedule thereto annexed.[1]

On Motion by Plaintiff for New Trial.

*Fouke & Lyon,* for plaintiff.

*Henderson Hurd & Daniels,* for defendant.

Before Brewer, Love, and Shiras, JJ.

Brewer, J., *(orally.)* This is an action brought by an assignee to recover a stock of goods seized by the defendant, as United States marshal, under an attachment against the assignor. The property was not named in the schedule to the assignment. The statutes of Iowa provide, substantially, that a general assignment shall carry all the property of the assignor; that no schedule shall be necessary, and that any mere imperfection or omission in the schedule shall not vitiate the assignment, or prevent it from carrying the entire property; and it is claimed that the instrument in question was a general assignment; and that, although the specific property in controversy was not named in the schedule, it passed by the terms of the assignment. Of course, a partial assignment conveys only the property described, and the question is whether this was a partial or general assignment. It is headed "General Assignment." It recites that whereas, the assignor is justly indebted in considerable sums of money, and has become unable to pay the same in full, and is now desirous of making a fair and equitable distribution of his property

[1]See note at end of case.

among all of his creditors; and then goes on to grant, convey, and assign "all the lands, and all the personal property of every name and nature whatsoever, of the said party of the first part, more particularly enumerated and described in the schedule hereto annexed, marked 'Schedule A,' or intended so to be."

Now, the reasons in favor of holding this as a general assignment are—*First,* the parties call it such; *second,* the assignor asserts his desire to distribute his property among all his creditors; *third,* it reads that he conveys all his lands, and all his personal property; and, further, in the affidavit to the schedule he swears that this is a true statement and account of his estate. The argument on the other hand is that the broad language in the first part of the description is restricted by that which follows. He assigns all the lands, and all the personal property, specifically enumerated and described, and this particular property in controversy is not described or enumerated. Just the same as though a man should convey all his lands in the city of Des Moines,—the broad expression in the first part of the description, "all his lands," would necessarily, by a familiar rule, be limited by the second part of the description, "in the city of Des Moines;" so here, all his lands, and all his personal property, as specifically enumerated and described, shows that he intended to convey, not all, but only those enumerated and described.

The question is not one free from doubt. Of course, no one questions the general rule that we are to take the description as a whole, or that general terms in one part are limited and qualified by any specific language used thereafter. Especially is that rule applicable in a case like this, where the property not enumerated and described is property of proportionately large value and great amount. He has enumerated on one page of this schedule his lands; on another page or pages certain accounts; but, though being a merchant in possession of a stock of goods, he does not mention that stock of goods in any way.

Now, for the intent of the party, which is controlling, we are to look at all parts of the instrument. When a party makes that kind of a description, to-wit, all the property enumerated in an attached schedule, and we find omitted from that schedule a large element of his property,—something which it could not, in the nature of things, be believed he would accidentally omit,—can we come to any other conclusion than that he intended to omit it, and that he intended to convey only that which he had specifically enumerated? If a man having a herd of cattle and a colt should make an assignment of "all his property, as specified in his schedule," and in the schedule mention simply the colt, would not we be irresistibly forced to the conclusion that his omission of that which was the main element of his property (his herd of cattle) was in pursuance of an intention to omit it? Of course the omission of some minor item would not carry such inference; but when a man sets out to make an assignment, and

takes pains to make a schedule of that which he assigns, and omits that which is the great bulk of his property, and conveys all his property as enumerated and described in the schedule, does not the omission carry with irresistible force the conviction that he did not intend to include in his general assignment that which he had omitted from the schedule?

It is, however, urged that this language, "as particularly enumerated," is limited by the further expression, "or intended so to be," and the argument is that he intended to convey all; that he prepared the schedule supposing it to contain all, and then added the words "intended so to be," so as to guard against omission, and include anything which might happen to be omitted. Certainly, if that language referred to the enumeration, it would have great force as to any minor matters omitted; but even then it would be doubtful whether it should be construed so as to reach any very valuable property omitted. But the language does not necessarily refer to the enumeration, and, in view of the facts as they appear from the testimony, it probably does not. "Particularly enumerated and described in the schedule hereto annexed, marked 'Schedule A,' or intended so to be. Now, does that refer to the enumeration or to the annexation? Ordinarily a qualifying clause refers back to its nearest antecedent; and when, as appears from the testimony, the assignment was made at one time and place and the schedule at another, it seems to support the grammatical construction, and that when this assignment contains a conveyance of property as enumerated and described in the schedule annexed, or intended so to be, the latter words qualify simply the annexation.

I do not, of course, intend to question the fact that the designation on the face of the instrument of "General Assignment," and the declaration of the intent to dispose of his property among all his creditors, make against the construction. Only for those facts, I think there would be but little question, and the presence of those facts obviously throws the question into doubt. But the plaintiff in this case rests upon this instrument, and must rest upon it. He must satisfy the court that this instrument was intended to convey this property, which it seemed as though the assignor had *ex industria* omitted from the schedule. The court is not satisfied, nor any member of the court, that such was the intention.

If we may look at matters outside the instrument itself, existing at the time and anterior thereto, it would seem as though they indicated an intention on his part not to convey by this assignment all his property. Contemporaneous, or nearly so, with this assignment, he executed a mortgage to one person and a deed to another. So nearly contemporaneous were the three instruments that it is difficult to believe that they were not all intended to be parts and parcels of one transaction. In the assignment he makes no reservation, as he might, of exempt property,—that which any man might be expected

to retain for the benefit of himself and family. This tends to show that he was, notwithstanding the general language in the first part of his description, intending to convey only that property named in the schedule, and which was in fact not exempt. Whenever a party rests his title upon an instrument susceptible of various constructions, unless, upon an examination of the entire instrument, the court is satisfied that the intent was to convey that which he now says was intended by the instrument, the court must hold against the title asserted. So, upon the face of the instrument alone, and also as helped by the attending circumstances, we all of us come to the conclusion that this property was not included in the assignment. Of course, we concede that there is a doubtful question.

The other matter upon which the trial proceeded arose out of the question whether the deed, mortgage, and assignment were part and parcel of one transaction. He gave a deed to his wife, and a mortgage to his wards for money which he claims to have borrowed from them. On the morning of the 18th he was aware of his insolvency,— was pressed by his creditors. The matter of an assignment was spoken of between himself and other parties. On that day he executed, or at least signed and acknowledged, the deed and mortgage. His testimony, uncontradicted, as I believe, is that he delivered the deed to his wife. The mortgage he kept in his own possession as guardian of his wards. On the 20th this assignment was made. On that day the three instruments were recorded, he himself placing them on record,—placing the deed and mortgage upon record prior to the assignment. He testifies he had received the deed back from his wife.

I believe, then, his testimony is that he did not intend to make an assignment—had not made up his mind to make an assignment—until the 19th; at any rate, until after he had executed this deed and mortgage. Now, the instruction given was to the effect that where a party becomes conscious of his insolvency,—of his inability to pay all his creditors in full,—and has in contemplation the disposition of his property, and, in pursuance of that purpose, makes to-day a deed, and to-morrow an assignment, they are to be treated as part and parcel of the same transaction, and that, notwithstanding he may not at the time of the deed have determined upon the assignment as the ultimate act. The testimony fully brought that state of affairs before the jury, and before the court: that the man was insolvent; that he was conscious of his insolvency; knew he was unable to pay all his creditors in full, and contemplated some disposition of his entire property. In pursuance of that he deeded to one creditor and mortgaged to another, and within two days executed the assignment. Under these circumstances, it seems to us that they are justly to be treated as part and parcel of the same transaction. A debtor cannot under the laws of Iowa respecting preferences by one instrument and another secure this and that creditor, when all the while

there is before his mind the certainty that he has got to make some disposition of his property because of the pressure of his creditors, and, only when he has secured the friendly creditors, then turn over by valid assignment the balance of his property. Hence, upon both of the matters discussed, the judgment must be sustained, and the motion for a new trial overruled. The amount in controversy is in excess of $5,000, and the plaintiff has full remedy by writ of error, if he desires.

### NOTE.

In Mims v. Armstrong, 31 Md. 87, an insolvent debtor made an assignment, wherein it was recited that the assignor "is indebted to diverse persons," etc., "and is desirous of providing for the payment thereof by assignment of *all* his property;" and in the granting clause the property was described as "all his goods," etc., "*choses in action*, and property of every name and nature whatever, belonging to him, and which are more properly and fully enumerated in the schedule hereunto annexed, marked 'Schedule A.'" The court held that the general words of the deed were limited and controlled by the schedule, and that a sum of money not named in the schedule did not pass to the assignee under the deed.

Under the statute governing voluntary assignments, when personal property is omitted from the schedule, whether by mistake or otherwise, and is afterwards surrendered to the trustee, he may, as against executions issued and levied after such surrender, retain and dispose of it for the purpose of the trust. Hasseld v. Seyfort, (Ind.) 5 N. E. Rep. 675.