## FLEITAS v. RICHARDSON, (No. 1.)

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 29. Argued April 14, 1892. — Decided March 6, 1893.

In executory process, according to the Civil Code of Louisiana, in the Circuit Court of the United States, an order, made without previous notice, for the seizure and sale of mortgaged land to pay the mortgage debt, under which the sale cannot take place until the debtor has had notice and opportunity to interpose objections, is not, at least when he does interpose within the time allowed, a final decree, from which an appeal lies to this court.

THIS was a bill in equity, filed June 29, 1888, in the Circuit Court of the United States for the Eastern District of Louisiana, by Gilbert M. Richardson, a citizen of New York, against Francis B. Fleitas, a citizen of Louisiana, and residing in that district, for a seizure and sale of mortgaged lands in the parish of St. Bernard in that district, under executory process, in accordance with the provisions of the Louisiana Code of Practice, the material parts of which are copied in the margin.[1]

---

[1] ART. 63. When the hypothecated property is in the hand of the debtor, and when the creditor, besides his hypothecary right, has against his debtor a title importing a confession of judgment, he shall be entitled to have the hypothecated property seized immediately and sold for the payment of his debt, including the capital, the interest and the costs, pursuant to the rules provided hereafter for executory proceedings.

ART. 98. The proceedings are ordinary, when citation takes place, and all the delays and forms of law are observed. They are executory, when seizure is obtained against the property of the debtor, without previous citation, in virtue of an act or title importing confession of judgment, or in other cases provided by law.

ART. 732. Executory process can only be resorted to in the following cases:

1st. When the creditor's right arises from an act importing a confession of judgment, and which contains a privilege of mortgage in his favor.

2d. When the creditor demands the execution of a judgment which has been rendered by a tribunal of this State, different from that within whose jurisdiction the execution is sought.

Statement of the Case.

The bill alleged that the defendant, on January 28, 1884, executed and delivered to the plaintiff five promissory notes for $12,600 each, payable to the plaintiff's order on January 1, in 1885, 1886, 1887, 1888 and 1889, respectively, with interest

---

The proceeding by provisional seizure (attachment) or *in rem* resembles in some sort the executory process, but should not be confounded with it, as they are subject to different rules.

ART. 733. An act is said to import a confession of judgment in matters of privilege and mortgage, when it is passed before a notary public, or other officer fulfilling the same functions, in the presence of two witnesses, and the debtor has declared or acknowledged the debt for which he gives the privilege or mortgage.

ART. 734. When the creditor is in possession of such an act, he may proceed against the debtor or his heirs, by causing the property subject to the privilege or mortgage to be seized and sold, on a simple petition, and without a previous citation of the debtor.

ART. 735. In obtaining this order of seizure, it shall suffice to give three days' notice to the debtor, counting from that on which the notice is given, if he resides on the spot, adding a day for every twenty miles between the place of his residence and the residence of the judge to whom the petition has been presented.

ART. 738. The debtor, against whom this order of seizure shall have been rendered, may obtain an injunction to suspend the sale, if before the time of sale he files in the court issuing the order his opposition in writing, alleging some of the reasons contained in the following article, and of which he shall swear to the truth.

ART. 739. The debtor can only arrest the sale of the thing thus seized, by alleging some of the following reasons, to wit:

1. That he has paid the debt for which he is sued;

2. That he has been remitted by the creditor;

3. That it has been extinguished by transaction, novation, or some other legal manner;

4. That time has been granted to him for paying the debt, although this circumstance be not mentioned in the contract;

5. That the act containing the privilege or mortgage is forged;

6. That it was obtained by fraud, violence, fear, or some other unlawful means;

7. That he has a liquidated account to plead in compensation to the debt claimed;

8. And finally, that the action for the recovery of the debt is barred by prescription.

ART. 740. When the judge grants an injunction, on the allegation under oath of any of the reasons mentioned in the preceding article, he shall require no surety from the defendant, but he shall pronounce summarily on the merits of his opposition if the plaintiff requires it.

at the yearly rate of eight per cent; and on the same day, by authentic act of mortgage, passed before a notary public in the presence of two witnesses, (a copy of which was annexed to the bill,) mortgaged the lands in question, to secure the payment of these notes, which were duly paraphed by the notary *ne varietur* to identify them with the act of mortgage, and that the last two notes (copies of which, with the paraph of the notary thereon, were also annexed to the bill,) and interest since July 1, 1887, had not been paid; that Shattuck & Hoffman, a commercial firm named in the mortgage, had no interest in these notes, and the plaintiff believed they had no interest in the act of mortgage; and that under these notes and the mortgage there was past due and owing to the plaintiff the sums of $27,216; with interest since January 1, 1888, on $25,200 thereof at the rate of eight per cent, and on $2016 thereof at the rate of five per cent.

The copy of the act of mortgage, annexed to the bill, showed that it was made to secure the payment of the notes to the plaintiff, and also to secure the payment to Shattuck & Hoffman of advances made by them to the defendant, under a written agreement between them and him of the same date, not exceeding the amount of his debt to the plaintiff; and authorized the mortgagees, in case any of the debts thereby secured should not be paid at maturity, to cause the mortgaged property "to be seized and sold under executory process, without appraisement, to the highest bidder for cash, hereby confessing judgment in favor of said mortgagees, and of such person or persons as may be the holder or holders of said promissory notes, and all assigns of said Shattuck & Hoffman, for the full amount thereof, capital and interest, together with all costs, charges, and expenses whatsoever;" and further provided that, in the event of a foreclosure of the mortgage and sale of the premises, "then out of the proceeds of said sale the said indebtedness to said Gilbert M. Richardson, whether held by said G. M. Richardson or his assigns, shall be paid by priority over said indebtedness due or to become due to said Shattuck & Hoffman or their successors and assigns."

Upon the filing of the bill, on June 29, 1888, the court

made the following order: "Let a writ of seizure and sale issue herein, as prayed for, and according to law, to satisfy complainant's demands as set forth in the foregoing bill and petition. Let the marshal seize and take into his possession according to law the property described in the foregoing petition, and then let the sale of this property be stayed till the further orders of this court."

On June 30, 1888, the clerk of the court issued to the defendant, and the marshal served upon him, a notice in these terms: "Take notice that payment is demanded of you, within three days from the service hereof, of the amount specified in the writ of seizure and sale granted on the bill of complaint herein, a copy of which accompanies this notice, with interest and costs; and, in default of payment within that delay, the property referred to in said bill of complaint will be seized and sold according to law, subject to the order on said bill. A further delay of one day for every twenty miles distance from your domicil to this city, at which place this court is held, is allowed you by law."

On the same day, the defendant, appearing for that purpose only, prayed for, and was refused, an appeal or writ of error from that order to this court.

At the next term of the Circuit Court, on November 19, 1888, the defendant, appearing for the purpose of the motion only, moved that all the orders and proceedings in the case be quashed and set aside, for want of jurisdiction, and also because, if the Circuit Court had authority under any circumstances to issue executory process, no case was made in the bill for issuing it, for want of authentic evidence, inasmuch as the mortgage appeared upon its face to have been made to include a private agreement between the defendant and Shattuck & Hoffman, (a copy of which, verified by his oath, was annexed to the motion;) and also, "making known unto the court that he will make no other and further appearance or pleading herein, at all times believing the proceeding void in law and this court without jurisdiction over the same," and praying that, if the court should refuse to quash the proceedings, he might be allowed an appeal to this court from the order of seizure and sale.

On November 22, a writ was issued to the marshal, commanding him to seize and take into his possession, according to law, the property described in the mortgage, and to sell it to satisfy the plaintiff's demands as set forth in the bill, and repeated in the writ; "said sale to be for cash, without appraisement, and said sale to be stayed until the further orders of the court, under its order dated June 29, 1888, on the bill herein;" and to make return of his proceedings to the court.

On November 24, the plaintiff moved to strike the defendant's motion from the files, as not being allowed by the rules of the court, or by the laws of Louisiana; and the court denied the motion to quash, as well as the motion to strike from the files, but granted the appeal, upon the defendant giving bond in an amount to be fixed by the court, and referred the case to a master to report the facts to enable the court to determine that amount.

On the return of the master's report, the court, on December 7, 1888, made the following order: "This cause came on to be heard, and was argued by counsel; whereupon the court, on consideration thereof, and further reconsidering the whole matter with reference to the order or decree awarding executory process herein, and the defendant's applications for appeal therefrom, doth now order that so much of the order of June 29, 1888, awarding executory process herein, as directs the marshal to stay the sale of the property directed to be seized till the further orders of the court, be stricken out; and that all orders made subsequently to the date of the defendant's application for an appeal on June 30, 1888, except the order of reference to the master to report the facts upon which the amount of bond could be determined and fixed, be revoked; and that an appeal, to operate as a supersedeas, be allowed to said defendant *nunc pro tunc* as of said 30th day of June, 1888, according to his petition then presented, on his giving bond as required by law, with good and solvent surety, in the sum of one thousand dollars. And it is further ordered that the marshal, on the filing of such bond, release from seizure the property he has seized herein, and that the exceptions to the order of reference be overruled."

On the same day, the defendant gave bond accordingly to prosecute his appeal to this court "from the decree rendered on June 29, 1888."

*Mr. J. R. Beckwith* for appellant.

*Mr. Thomas J. Semmes* for appellee.

Mr. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

At October term, 1888, this court denied a motion to dismiss or affirm, submitted on briefs under Rule 6. But on fuller consideration of the case, and in the light of the oral arguments of counsel, we are constrained (although the question is not free from difficulty,) to hold that this court has no jurisdiction, because the order appealed from is not a final judgment or decree.

By the Louisiana Code of Practice, an act of mortgage, passed before a notary public in the presence of two witnesses, with an acknowledgment and identification of the debt thereby secured, imports a confession of judgment, upon which the creditor is entitled to executory process, and to obtain, without previous citation to the debtor, an order for the seizure and sale of the mortgaged property for the payment of the debt. Arts. 63, 98, 732, 733, 734. But the clerk of the court is required to give notice of this order to the debtor three days before the sale, adding a day for every twenty miles between the place of his residence and the place where the court is held. Art. 735. If such notice is not given to the debtor, the proceeding is erroneous. *Saillard* v. *White*, 14 Louisiana, 84; *Hart* v. *Pike*, 29 La. Ann. 262. The debtor may obtain an injunction to suspend the sale, if before the time of sale he files in the court his opposition in writing, under oath, alleging that the debt has been paid, or remitted, or extinguished, or that the time of payment has been extended, or that the act of mortgage is forged, or obtained by fraud, violence, or other unlawful means, or that he has a

liquidated account to plead in compensation, or that the action for the debt is barred by prescription. Arts. 738, 739.

The provisions of that code, making the acknowledgment of the debt and mortgage, in solemn form before a notary public, conclusive evidence, upon which, without previous notice to the debtor, the creditor may obtain an order for the seizure and sale of the mortgaged lands to satisfy his debt, bear some analogy to proceedings, (never denied to be due process of law,) which were well known where the common law prevailed, before the adoption of the Constitution of the United States — such as the recognizances called statute merchant and statute staple in England, and similar recognizances in Massachusetts, taken before a court or magistrate, and upon which, when recorded, execution might issue without previous notice to the debtor, and be levied upon his lands or goods. 2 Bl. Com. 160, 341, 342; Bac. Ab. Execution, B; *The King* v. *Giles*, 8 Price, 293, 316, 351; Mass. Stat. 1782, c. 21; *Albee* v. *Ward*, 8 Mass. 79, 84; Rev. Stat. c. 118; Gen. Stat. c. 152; Pub. Stat. c. 193.

In Louisiana, however, the act before the notary, as well as the order for seizure and sale, includes no lands but those described in the mortgage; and, although the creditor may obtain that order without previous notice to the debtor, the sale cannot take place until the debtor has had notice and opportunity to interpose objections.

This proceeding, therefore, is a civil suit *inter partes*, which, where the parties are citizens of different States, is within the jurisdiction conferred by Congress on the Circuit Court of the United States. Act of September 24, 1789, c. 20, § 11, 1 Stat. 79; Rev. Stat. § 739; Acts of March 3, 1875, c. 137, § 1, 18 Stat. 470; March 3, 1887, c. 373, § 1, 24 Stat. 552; August 13, 1888, c. 866, 25 Stat. 434; *Toland* v. *Sprague*, 12 Pet. 300; *Levy* v. *Fitzpatrick*, 15 Pet. 167; *Chaffee* v. *Hayward*, 20 How. 208, 215; *Marin* v. *Lalley*, 17 Wall. 14. And the proceeding, though in summary form, is in the nature of a bill in equity for the foreclosure of a mortgage, and clearly belongs on the equity side of that court. *Brewster* v. *Wakefield*, 22 How. 118, 128; *Walker* v. *Dreville*, 12 Wall. 440;

*Marin* v. *Lalley*, 17 Wall. 14; *Idaho & Oregon Co.* v. *Brad-
bury*, 132 U. S. 509, 515.

The debtor being entitled to notice and hearing before an
actual sale of the property, it would seem, upon principle,
that the order for a sale must be considered as interlocutory
only, and not the final decree in the case, at least when the
debtor does, within the time allowed by the code, come in
and contest the validity of the proceedings. *McGourkey* v.
*Toledo & Ohio Railway*, 146 U. S. 536, 545, 547, 549, and
cases there cited.

By the decisions of the Supreme Court of Louisiana, indeed,
such an order, "exhausting the power of the court *quoad* the
application," although its execution may be stayed on the
opposition of the debtor, is subject to appeal, under the prac-
tice in that State. Louisiana Code of Practice, arts. 565, 566;
*Harrod* v. *Voorhies*, 16 Louisiana, 254; *Mitchell* v. *Logan*, 34
La. Ann. 998, 1003; *Ralston* v. *British & American Mortgage
Co.*, 37 La. Ann. 193. But the practice or the decisions of the
State in this respect cannot control the appellate jurisdiction of
this court from the Circuit Court of the United States, as de-
fined by act of Congress. Rev. Stat. § 691; *Luxton* v. *North
River Bridge, ante*, 337, 341.

Upon the question whether the order of seizure and sale
was a final judgment, the case of *Levy* v. *Fitzpatrick*, above
cited, is much in point, and was fully discussed in the opinion
delivered by Mr. Justice McKinley, who was peculiarly famil-
iar with the law of Louisiana. In that case, a writ of error
to reverse the order of seizure and sale, made without previous
notice to the debtors, was dismissed, for want of jurisdiction;
and Mr. Justice McKinley, speaking for the whole court,
said:

"Had this proceeding taken place before a judge of compe-
tent authority in Louisiana, the debtors might have appealed
from the order of the judge to the Supreme Court of that
State; and that court might, according to the laws of Louis-
iana, have examined and decided upon the errors which have
been assigned here. But there is a marked and radical differ-
ence between the jurisdiction of the courts of Louisiana, and

those of the United States. By the former, no regard is paid
to the citizenship of the parties; and in such a case as this,
no process is necessary to bring the debtors before the court.
They having signed and acknowledged the authentic act,
according to the forms of the law of Louisiana, are, for all
the purposes of obtaining executory process, presumed to be
before the judge. Louisiana Code of Practice, arts. 733, 734.
An appeal will lie to the Supreme Court of Louisiana from
any interlocutory or incidental order, made in the progress
of the cause, which might produce irreparable injury. *State*
v. *Lewis,* 9 Martin, 301, 302; *Broussard* v. *Fralian,* 4 Martin,
489; *Gurlie* v. *Coquet,* 3 Martin (N. S.) 498; *Seghers* v. *An-*
*theman,* 1 Martin (N. S.) 73; *State* v. *Pitot,* 12 Martin,
485."

But, as the judge went on to say, "the jurisdiction of the
courts of the United States is limited by law, and can only be
exercised in specified cases." He then observed that by the
Judiciary Act of 1789, c. 20, § 11, giving the Circuit Court of
the United States original jurisdiction of suits at common law
or in equity between citizens of different States, no judgment
could be rendered by a Circuit Court against any defendant
not served with process, unless he waived the necessity of
service by entering his appearance in the suit: and that, by
section 22 of the same act, only final judgments of the Circuit
Court could be reviewed by this court on writ of error; and
added: "It is obvious that the debtors were not before the
judge, in this case, by the service of process, or by voluntary
appearance, when he granted the executory process. In that
aspect of the case, then, the order could not be regarded as a
final judgment, within the meaning of the twenty-second
section of the statute. But was the order a final judgment,
according to the laws of Louisiana? The fact of its being
subject to appeal does not prove that it was, as has already
been shown. Nor could it, *per se,* give to the execution of the
process, ordered by the judge, the dignity of a judicial sale.
Unless at least three days' previous notice were given to the
debtors, the sale would be utterly void. *Grant* v. *Walden,* 6
Louisiana, 623, 631. This proves that some other act was

necessary, on the part of the plaintiffs, to entitle them to the fruits of their judgment by confession. And in that act is involved the merits of the whole case; because, upon that notice, the debtors had a right to come into court and file their petition, which is technically called an opposition, and set up, as matter of defence, everything that could be assigned for error here, and pray for an injunction to stay the executory process till the matter of the petition could be heard and determined. And upon an answer to the petition coming in, the whole merits of the case between the parties, including the necessary questions of jurisdiction, might have been tried, and final judgment rendered. Code of Practice, Arts. 738, 739. From this view of the case, we think the order granting executory process cannot be regarded as anything more than a judgment *nisi*. To such a judgment a writ of error would not lie. The writ of error in this case must therefore be dismissed." 15 Pet. 170–172.

The single ground of that decision, as appears by these extracts from the opinion, was that there had been no final judgment in the Circuit Court. The point that the case, though coming from the State of Louisiana, where the distinction between common law and equity is not preserved, yet, being essentially a suit in equity in the Circuit Court of the United States, should have been brought to this court by appeal, and not by writ of error, was not considered or noticed, and had not then been decided, although it is now well settled. *McCollum* v. *Eager*, 2 How. 61; *Walker* v. *Dreville*, 12 Wall. 440; *Marin* v. *Lalley*, 17 Wall. 14.

In *Marin* v. *Lalley*, above cited, the order of seizure and sale was made by the Circuit Court on March 28, 1872; the defendants afterwards came in, filed various objections, oppositions and answers, and prayed that the proceedings might be quashed; the court, on June 3, ordered that "the objections and answers of the defendants to the order of seizure and sale be overruled;" and the defendants, on June 13, appealed (as appears on referring to the record) from "the order for executory process, entered herein on the 28th day of March, 1872, and made final on the 3d day of June, 1872, by judg-

ment of this honorable court." The appeal taken by the defendants in that case, and which this court refused to dismiss on motion, was not an appeal from the original order of March 28, but from that order as made final by the judgment of June 3, and was, therefore, an appeal from that judgment. It was of this final order, made after notice to and opposition by the defendants, that Chief Justice Chase, in delivering judgment, said: "It is in substance a decree of foreclosure and sale, which has repeatedly been held to be a final decree." "If there were any doubt as to the finality of the original order, there can be none that it became final when the answer and objections were overruled. That order seems to have been made contradictorily with the debtors. Their opposition was overruled, and their property decreed to be seized and sold to pay their debts." And he distinguished *Levy* v. *Fitzpatrick*, above cited, on the ground that the order there held not to be a final judgment was "the original order, without the three days' notice, and without any act on the part of the debtors." 17 Wall. 17, 18.

The present case appears to us to be governed by *Levy* v. *Fitzpatrick*, and to be likewise distinguishable from *Marin* v. *Lalley*.

The original order of the Circuit Court for a seizure and sale was made June 29, 1888, and directed the marshal to seize the property, but to stay the sale until the further orders of the court. On June 30, a notice, together with a copy of the bill and order, was issued by the clerk and served on the defendant; and the defendant, appearing specially for the purpose, prayed for an appeal from that order, which was denied. These were all the proceedings which took place at the first term.

At the next term, the defendant, on November 19, again appearing specially, moved to quash the proceedings, and, if that should be refused, renewed his prayer for an appeal from the order of June 29. The writ of seizure and sale was not issued to the marshal until November 22, and directed that the sale should be stayed until the further orders of the court, under its former order. On November 24, the court denied

the motion to quash, and granted the appeal, upon the defendant giving bond in an amount to be determined. On December 7, the court, reconsidering the whole matter with reference to the order of June 29, and to the defendant's application of June 30 for an appeal from that order, ordered that so much of that order, as directed the marshal to stay the sale until the further orders of the court, be stricken out ; and that an appeal, to operate as a supersedeas, be allowed to the defendant *nunc pro tunc* as of June 30, 1888, on his giving bond in the sum of $1000. The defendant gave bond accordingly to prosecute his appeal " from the decree rendered on June 29, 1888."

It thus clearly appears that the only appeal claimed by the defendant was from the original order of seizure and sale of June 29, 1888, made before notice to the defendant, and was allowed, as of June 30, upon the application which he had then made, as soon as he had notice of that order ; and that no appeal was, in terms or by implication, claimed, applied for, allowed or taken from the order of December 7, which was the final order of the Circuit Court in this case.

It necessarily follows that the order appealed from was not a final decree, and that the appeal must be dismissed for want of jurisdiction.

We are the more ready to accept this conclusion, because we have no doubt that if, upon this record, the appeal could be treated as having been taken from the final decree of December 7, no reason is shown for reversing the judgment of the Circuit Court. The only objections taken below to the order and proceedings, as appears by the motion to quash, were that the Circuit Court had no jurisdiction, and that there was no authentic evidence of the debt to Shattuck & Hoffman, secured by the same mortgage as the notes to the plaintiff. But that the Circuit Court, sitting in equity, had jurisdiction of the case, has been already shown. And there being authentic evidence of the plaintiff's debt, the want of like evidence of the separate and distinct debt to Shattuck & Hoffman, which by the express terms of the mortgage was subordinate to the debt to the plaintiff, is immaterial. *Chambliss* v. *Atchison*, 2 La. Ann. 488, 491; *Renshaw* v. *Richards*, 30 La. Ann. 398;

*Dejean* v. *Hebert*, 31 La. Ann. 729; *Soniat* v. *Miles*, 32 La. Ann. 164.

*Appeal dismissed for want of jurisdiction.*

MR. JUSTICE SHIRAS, not having been a member of the court when this case was argued, took no part in its decision.