W. G. COYLE & CO. et al. v. STERN.

(Circuit Court of Appeals, Fifth Circuit. January 16, 1912. Rehearing Denied February 21, 1912.)

No. 2,178.

1. REMOVAL OF CAUSES (§ 25*)—GROUNDS—DETERMINATION.

Whether a cause is removable under Act Cong. Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), must be determined from plaintiff's initial pleading, without any aid from defendant's petition for removal.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 58, 59; Dec. Dig. § 25.*]

2. REMOVAL OF CAUSES (§ 4*)—CAUSES REMOVABLE—"SUIT."

A proceeding, termed "executory process" in Louisiana, to seize and sell a vessel under a mortgage, is a "suit" within Act Cong. Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), which provides for the removal of certain suits.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 11–20; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 7, pp. 6769–6778; vol. 8, p. 7809.]

3. REMOVAL OF CAUSES (§ 25*)—SUITS ARISING UNDER FEDERAL LAWS—PETITION.

A petition to seize and sell a vessel under a mortgage given by a third person, does not show a controversy removable under Act Cong. Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), as one arising under a federal law, because it states that a federal marshal, who is not a party to the proceeding, disregarding a state law, sold the vessel to defendant without reading the notice of the mortgages thereon, though they were properly recorded in the office of the collector of the port where the vessel was enrolled.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 25.*]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Proceeding by W. G. Coyle & Co. and others against Nathan Stern. From a judgment refusing to remand the cause to a state court, petitioners appeal. Reversed and remanded, with directions.

W. G. Coyle & Co. on August 10, 1909, filed in the civil district court for the parish of Orleans, La., the following petition for executory process:

"The petition of W. G. Coyle & Co., a commercial firm composed of William G. Coyle and Chas. G. Coyle, and doing business in the city of New Orleans, and of Albert P. Shroeder, a resident of the city of New Orleans, and Henry L. Huntington, a resident of Pass Christian, state of Mississippi, and doing business in New Orleans, with respect represents:

"That the said W. G. Coyle & Co. are the owners and holders of a promissory note for the sum of $5,000, numbered No. 5, dated New Orleans, La., April 28, 1909, and drawn by Chas. Collins Buck to his own order and indorsed by him, and made payable on or before April 28, 1911; and that Albert P. Shroeder is the owner and holder of a promissory note for the sum of $5,000, numbered No. 2, dated New Orleans, La., April 28, 1909, and drawn by Chas. Collins Buck to his own order, and by him indorsed and made payable on or before April 28, 1911; and that Henry L. Huntington is the owner and holder of a promissory note for the sum of $5,000, num-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bered No. 1, dated New Orleans, La., April 28, 1909, and drawn by Chas. Collins Buck to his own order and by him indorsed, and made payable on or before April 28, 1911; and that the above-mentioned notes are numbered 1, 2, and 5 of a series of five notes, each for the sum of $5,000, aggregating the sum of $25,000, the payment of which is secured by a mortgage upon the screw steamer Radha, which said mortgage was passed before Louis A. Hubert, notary public, at his office in the city of New Orleans, La., on April 28, 1909, and was recorded on the same day in the office of the collector of the port of New Orleans, in liber B. M. of Mortgages, folio 1, etc., as will more fully appear from the act of mortgages filed herewith, and hereby made a part hereof and the three notes annexed.

"Your petitioners further represent that the act of mortgages provides that 'if default be made in such payments or in any one of such payments, or if default be made in prompt and faithful performance of any of the covenants herein contained, or if the said party of the second part shall at any time deem himself in danger of losing said debt or any part thereof by delaying the collection thereof until the expiration of the time above limited for the payment thereof, or if the said party of the first part shall sell or attempt to sell said property, or any part thereof, or if the same shall be levied upon or taken by virtue of any attachment, or execution against said party, * * * said party of the second part is hereby authorized to take possession of said goods, chattels and personal property at any time wherever found either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much thereof as may be necessary, to satisfy said debt, interest and reasonable expenses after first giving a notice of fifteen days to be given by publication in some newspaper published in New Orleans, and to retain the same out of the proceeds of such sale, the surplus (if any) to belong and to be returned to said party of the first part.'

"Your petitioners further represent that on June 5, 1909, the marshal of the United States, one Victor Loisel, acting under and by virtue of a fieri facias issued out of the Circuit Court of the United States for the Eastern District of Louisiana, for the purpose of satisfying a judgment of said court in the case of Joseph G. Powell v. Chas. Collins Buck, said case being No. 13,699 of said court, seized the said screw steamer Radha, her boats, tackle, apparel, furniture, etc., on board and as she now lies on the west bank of the Mississippi river, on the west bank opposite the Canal Street Ferry landing, and on July 16, 1909, advertised that he would sell same on August 9, 1909; i. e., with only 25 days advertisement.

"Your petitioners further represent that the said marshal, totally disregarding the law of the state of Louisiana regarding the same under execution of property which is susceptible of being mortgaged, has sold on the 9th day of August, 1909, to one Nathan S. Stern, the said screw steamer Radha for the sum of $1,825, without reading the notice of the special mortgages thereon, although said mortgages were properly recorded in the office of the collector of the port of New Orleans, where the said vessel is enrolled, according to the laws of the United States and of which mortgage and recordation notice was acknowledge (acknowledged) prior to said sale by the marshal.

"Your petitioners further represent that the said price of $1,825 for which the sale was made was not sufficient to cover the prior mortgage on the said vessel, and that the said sale was a conventional sale, and not a judicial one, for the reason that it was made with only 25 days advertisement with the written consent of the judgment debtor, C. C. Buck.

"Your petitioners further represent that they are in danger of losing their mortgage by reason of said sale and the seizure and sale by the marshal has made their note become due and exigible in accordance with the terms of the mortgage.

"Wherefore, your petitioners pray that a writ of seizure and sale issue herein directed to the sheriff of the parish of Orleans, directing him to seize and sell, according to law, the screw steamer Radha, her hull, machinery, boats, tackle, and appliances, and that out of the proceeds your petitioners

be paid by preference the sum of $15,000, with interest and costs, and for general relief."

Buck appeared on the same day, and filed a waiver as follows: "Into court comes Charles Collins Buck, who admits that the mortgage held by petitioners is in danger of being lost, and that the seizure by the United States marshal in execution in the case of Joseph G. Powell, your appearer, has matured the mortgage and made same executory. Appearer now waives the notice of demand and the delays do issue the writ of seizure and sale herein." The writ of seizure was duly issued, and the boat advertised for sale, the sale to take place September 23, 1909. Nathan S. Stern, the appellee, on September 20, 1909, filed an affidavit of ownership of the boat, and on the 22d of September he filed a petition to remove the cause to the Circuit Court. Prior thereto, to wit, August 18, 1909, Robert H. Downman and Frank B. Hayne filed in the suit a petition of intervention. An order of removal was made by the state court, and the record was duly filed in the Circuit Court. In the latter court a motion to remand the cause was filed and overruled. After recasting the pleadings, the cause proceeded to a hearing and final decree in favor of the appellee. From this decree Coyle & Co. and Downman and Hayne have appealed.

It is unnecessary to make further reference to the proceedings in the state court.

Charles Louque, for appellant Coyle & Co.

George H. Terriberry, for appellants Downman and Hayne.

John D. Grace and Merrick, Gensler, Lewis & Schwarz, for appellee.

Before McCORMICK and SHELBY, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge (after stating the facts as above). [1] In view of the conclusion reached by the court upon the motion to remand the cause to the state court, it is deemed unnecessary to go into the merits of the controversy. The appellee bases his right to remove the suit on the ground that it is one arising under a law of the United States, and to that phase of the case our attention will be confined.

The principles of law regulating the removal of a suit, as one arising under a law of the United States, are thoroughly established and well recognized, but it frequently becomes difficult to make a proper application of these principles to the facts of a particular case. Under Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), the right to remove a suit as one arising under a law of the United States is limited, by the express words of the statute, to a defendant or defendants, while under Act March 3, 1875, c. 137, 18 Stat. 470, it was competent for either party to remove. Under the latter act, it was deemed sufficient, for the purpose of removal, if the record disclosed the existence of the federal question. The act of 1888, however, effects a radical change in that respect. The courts no longer search the record to ascertain whether the case be removable, but confine themselves to an examination of the bill, declaration, petition, or complaint of the plaintiff. If the initial pleading of the plaintiff fail to disclose a cause of action arising under a law of the United States, the defendant will not be permitted to supply the omission by allegations in his petition for removal showing that it is one so arising.

In support of the foregoing views, reference is made to the following authorities, some of which will be more particularly referred to hereafter: Tennessee v. Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Ex Parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264; Chappell v. Waterworth, 155 U. S. 102, 15 Sup. Ct. 34, 39 L. Ed. 85; Minnesota v. Northern Securities Company, 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870; Railroad Company v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672; Railway v. Skotowe, 162 U. S. 490, 16 Sup. Ct. 869, 40 L. Ed. 1048; Railroad Company v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed. 126; In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873; In re Dunn, 212 U. S. 374, 29 Sup. Ct. 299, 53 L. Ed. 558; Shoshone Mining Company v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864; Gold Washing & Water Company v. Keyes, 96 U. S. 199, 24 L. Ed. 656.

[2] At the outset the objection is made by the appellants that the proceeding in the state court was not a suit, and hence that it was not removable. Since, under the statute, suits only may be removed, it becomes necessary to determine the exact status of the proceeding, which we are considering. It consisted of a petition filed by the appellants in the state court, termed under the laws of Louisiana "executory process," praying for the seizure and sale of the steam yacht Radha in satisfaction of a mortgage indebtedness due by Charles C. Buck. In the case of Fleitas v. Richardson, 147 U. S. 538, 13 Sup. Ct. 429, 37 L. Ed. 272, Mr. Justice Gray minutely described the proceeding by executory process, and distinctly held that it was a suit within the jurisdiction of the United States courts when other requisites of the statutes were present. Thus at page 544 of 147 U. S., at page 432 of 13 Sup. Ct. (37 L. Ed. 272), it was said:

"In Louisiana, however, the act before the notary, as well as the order for seizure and sale, includes no lands but those described in the mortgage; and, although the creditor may obtain that order without previous notice to the debtor, the sale cannot take place until the debtor has had notice and opportunity to interpose objections. This proceeding, therefore, is a civil suit inter partes, which, where the parties are citizens of different states, is within the jurisdiction conferred by Congress on the Circuit Court of the United States. Act Sept. 24, 1789, c. 20, par. 11, 1 Stat. 79; Rev. Stat. par. 739; Act March 3, 1875, c. 137, par. 1, 18 Stat. 470; Act March 3, 1887, c. 373, par. 1, 24 Stat. 552; Act Aug. 13, 1888, c. 866, 25 Stat. 434 [U. S. Comp. St. 1901, p. 508]; Toland v. Sprague, 12 Pet. 300 [9 L. Ed. 1093]; Levy v. Fitzpatrick, 15 Pet. 167 [10 L. Ed. 699]; Chaffee v. Hayward, 20 How. 208, 215 [15 L. Ed. 851]; Marin v. Lalley, 17 Wall. 14 [21 L. Ed. 596]. And the proceeding, though in a summary form, is in the nature of a bill in equity for the foreclosure of a mortgage, and clearly belongs on the equity side of that court. Brewster v. Wakefield, 22 How. 118, 128 [16 L. Ed. 301]; Walker v. Dreville, 12 Wall. 440 [20 L. Ed. 429]; Marin v. Lalley, 17 Wall. 14 [21 L. Ed. 596]; Idaho & Oregon Co. v. Bradbury, 132 U. S. 509, 515 [10 Sup. Ct. 177, 33 L. Ed. 433]."

In reference to a similar proceeding Judge Pardee sustained the removal of Lockhart v. Morey (C. C.) 31 Fed. 497.

[3] The proceeding then is a suit. But the decisive question remains: Does the petition for executory process disclose on its face that the suit arises under a law of the United States? That it must

be so disclosed by a statement of facts in legal and logical form, such as is required in good pleading, has been, as we have intimated, repeatedly decided. Speaking for the court in Gold Washing & Water Co. v. Keyes, 96 U. S. 203, 204 (24 L. Ed. 656), Mr. Chief Justice Waite said:

"The statutes referred to contain many provisions; but the particular provision relied upon is nowhere indicated. A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved. That this was the intention of Congress is apparent from section 5 of the act of 1875, which requires the Circuit Court to dismiss the cause or remand it to the state court, if it shall appear, 'at any time after such suit has been brought or removed thereto, that such suit does not really or substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court.' Before, therefore, a Circuit Court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, 'in legal and logical form,' such as is required in good pleading (1 Chit. Pl. 213), that the suit is one which 'really and substantially involves a dispute or controversy' as to a right which depends upon the construction or effect of the Constitution or some law or treaty of the United States."

In Chappel v. Waterworth, 155 U. S. 107, 108, 15 Sup. Ct. 35, 36, 39 L. Ed. 85, the following language was used:

"The question presented by the pleadings considered in the opinion below, and argued at the bar, cannot be decided upon this record, because the case was removed into the Circuit Court of the United States without authority of law. The question of removal is governed by the decision of this court at the last term in Tennessee v. Bank of Commerce, 152 U. S. 454 [14 Sup. Ct. 654, 38 L. Ed. 511], by which, upon full consideration, it was adjudged that under the acts of March 3, 1887, c. 373 (24 Stat. 552), and August 13, 1888, c. 866 (25 Stat. 433), a case (not depending on the citizenship of the parties, nor otherwise specially provided for) cannot be removed from a state court into the Circuit Court of the United States, as one arising under the Constitution, laws, or treaties of the United States, unless that appears by the plaintiff's statement of his own claim; and that, if it does not so appear, the want cannot be supplied by any statement in the petition for removal or in the subsequent pleadings."

Referring to the Blackburn Case it was said by the Court in Shoshone Mining Company v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864:

"In Blackburn v. Portland Gold Mining Company, 175 U. S. 571 [20 Sup. Ct. 222, 44 L. Ed. 276], decided January 8, 1900, we held that a suit brought in support of an adverse claim under sections 2325 and 2326 of the Revised Statutes[1] was not a suit arising under the laws of the United States in such sense as to confer jurisdiction on a federal court, regardless of the citizenship of the parties."

And at page 507 of 177 U. S., at page 726 of 20 Sup. Ct. (44 L. Ed. 864), it was further said:

"We pointed out in the former opinion that it was well settled that a suit to enforce a right which takes its origin in the laws of the United States is not necessarily one arising under the Constitution or laws of the United States within the meaning of the jurisdictional clauses, for, if it did, every action to establish title to real estate (at least in the newer states)

[1] U. S. Comp. St. 1901, pp. 1429, 1430.

would be such a one, as all titles in those states come from the United States or by virtue of its laws."

In Blackburn v. Portland Gold Mining Company, 175 U. S. 585, 20 Sup. Ct. 227 (44 L. Ed. 276), the court in commenting on the case of Colorado Central Consolidated Mining Co. v. Turck, 150 U. S. 138, 14 Sup. Ct. 35. 37 L. Ed. 1030, employed the following language:

"While it is true that the conclusion reached was mainly put upon the ground that the record did not disclose affirmatively that any distinctive federal question was involved, yet, as the record did disclose a controversy between claimants arising under a federal mining statute, it is a necessary implication of the decision that that fact alone did not render the case one of which the Circuit Court could take jurisdiction irrespective of citizenship, but that other and apt allegations were required showing that the controversy was determinable by one of two conflicting constructions of the federal statute, and not one of mere fact in which the validity of the statute was not drawn into question."

See, also, Mountain View Mining & Milling Co. v. McFadden, 180 U. S. 533, 21 Sup. Ct. 488, 45 L. Ed. 656, affirming the Blackburn and Shoshone Cases referred to above.

In view of the foregoing authorities, can it be said that the petition of the appellants discloses a removable case? Upon the argument counsel for the appellee were requested to indicate specifically the allegations of the petition upon which they relied to remand the cause. In response to the inquiry the following portion of the petition was pointed out:

"Your petitioner further represents that the said marshal, totally disregarding the law of the state of Louisiana regarding the same under execution of property which is susceptible of being mortgaged, has sold on the 9th day of August, 1909, to one Nathan S. Stern, the said screw steamer Radha for the sum of $1,825. without reading the notice of the special mortgages thereon, although said mortgages were properly recorded in the office of the collector of the port of New Orleans, where the said vessel is enrolled, according to the laws of the United States, and of which mortgage and recordation notice was acknowledge (acknowledged) prior to said sale by the marshal."

We fail to discover in these allegations any reference to a federal question, and surely there is an utter absence of apt allegations showing that there is a "controversy determinable by one of two conflicting constructions of a federal statute." Indeed, the allegations of the petition scarcely rise to the dignity of showing that there is any controversy whatever in the suit, must less one involving the construction of a law of the United States. Buck is not complainant, and there is no controversy with the marshal, who is without interest in the proceeding, nor is there one alleged with the appellee. The only allegation in the entire petition, having reference to the appellee, either direct or remote, is embodied in the following words: That the marshal "has sold on the 9th day of August, 1909, to one Nathan S. Stern, the said screw steamer Radha for the sum of $1,825." If the marshal is charged with any delinquency in the performance of his duty, it is that he disregarded, not the laws of the United States, but those of Louisiana. The merest reference is made

to a federal statute in the allegation that the mortgage executed by Buck to the appellants was enrolled according to the laws of the United States, and that fact appears by reference to the mortgage which is annexed as an exhibit to the petition. Certainly it cannot be said that such allegations disclose a case arising under a law of the United States. The petition for executory process, the suit of the appellants, was based upon a contract between the appellants and Buck, and the only claim asserted was the right to enforce a summary sale of the mortgaged boat under the laws of the state of Louisiana.

Counsel for the appellee, however, seem to place special reliance upon Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314, in support of their contention that the present case is one arising under a federal statute. Bock v. Perkins arose prior to the removal act of 1888 ([C. C.] 28 Fed. 123), and it was a suit brought directly against Perkins, who was a United States marshal, for damages growing out of an alleged trespass in seizing goods under a writ of attachment. Perkins removed the suit to the Circuit Court, and the Supreme Court held that the former properly retained jurisdiction. Discussing the question of jurisdiction the court observed:

"The court below properly retained the case for trial. Every marshal of the United States, as well as his deputy, must take an oath or affirmation that he will faithfully execute all lawful precepts directed to him, and in all things well and truly perform the duties of his office. The marshal must also give bond, with sureties, for the faithful performance of the duties of his office by himself and deputies. The marshals and their deputies have, in the respective states, the same powers in executing the laws of the United States as sheriffs and their deputies have in executing the laws of such states. Rev. Stat. pars. 782, 783, 788 [U. S. Comp. St. 1901. pp. 606–608]. A case, therefore, depending upon the inquiry whether a marshal or his deputy has rightfully executed a lawful precept directed to the former from a court of· the United States, is one arising under the laws of the United States; for, as this court has said: 'Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted.' Tennessee v. Davis, 100 U. S. 257, 264 [25 L. Ed. 648]; Railroad Co. v. Mississippi, 102 U. S. 135, 141 [26 L. Ed. 96]. If the goods in question, when seized, were the property of Lane, the marshal and his deputies were in the discharge of duties imposed upon them by the laws of the United States; and for any failure in that regard he would be liable to suit by any one thereby injured. Rev. Stat. par. 784. This case was therefore one arising under the laws of the United States, and removable from the state court. Feibelman v. Packard, 109 U. S. 421, 423 [3 Sup. Ct. 289, 27 L. Ed. 984]; Bachrack v. Norton, 132 U. S. 377 [10 Sup. Ct. 106, 33 L. Ed. 377]; Reagan v. Aiken, 138 U. S. 109 [11 Sup. Ct. 283, 34 L. Ed. 892]; Houser v. Clayton, 3 Woods, 273 [Fed. Cas. No. 6,739]; Ellis v. Norton [C. C.] 16 Fed. 4."

In this case we have seen that the marshal is not a party, and there is an absence of apt allegations in the petition of the appellant disclosing a controversy, the determination of which depends upon the construction of a federal statute. · Bock v. Perkins only reaffirms the principle announced in numerous cases, and it is by no means determinative of the present controversy.

Whether the petition filed by the appellee for the removal of the cause contains appropriate allegations disclosing that the suit arises

under the laws of the United States we need not inquire. We assume, however, that it does, but for the purpose of the present case that petition is as if it did not exist.

The appellee contends that the question of the removal of the cause was settled by the Supreme Court in the matter of Ex parte Coyle, 217 U. S. 590, 30 Sup. Ct. 693, 54 L. Ed. 895, and that this court is precluded from its consideration.  By reference to the case, it will be seen that the purpose of the appellants was.to secure a writ of mandamus requiring the trial court to remand the suit to the state court.  Leave to file the petition was denied by the court without an opinion.  The real reasons actuating the court may be ascertained by examining the case of Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, subsequently decided.

It may be added that should there arise in the future progress of the case federal questions, which are not now apparent, the state court is competent, and it is its duty to decide them.  If errors supervene, the remedy by writ of error is open to the party aggrieved. Arkansas v. Kansas & Texas Coal Co., 183 U. S. 190, 191, 22 Sup. Ct. 47, 46 L. Ed. 144.

There is one other question in the case well worthy of serious consideration.  Was the appellee a defendant in the state court or was he an intervening plaintiff?  The record contains no order of the state court permitting him to intervene as defendant, nor indeed did he pray to intervene in that capacity, but simply as a party for the purpose of removing the suit.  It is doubtful whether the removal statutes provide for such a case.  But being clearly satisfied, for the reasons stated, that the suit should not have been removed, we express no opinion upon the question suggested.

The judgment should be reversed and the cause remanded to the trial court, with instructions to remand it to the state court at the cost of the appellee, Stern.  And it is so ordered.

