# SHOSHONE MINING COMPANY *v.* RUTTER.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH
CIRCUIT.

No. 208.   Argued March 21, 1900. — Decided April 30, 1900.

A suit brought in support of an adverse claim under Rev. Stat. §§ 2325,
2326, is not a suit arising under the laws of the United States in such a
sense as to confer jurisdiction on a Federal court, regardless of the citi-
zenship of the parties.

*Blackburn* v. *Portland Gold Mining Co.*, 175 U. S. 571, reëxamined and af-
firmed to this point.

Although suits like the present one may sometimes so present questions
arising under the Constitution or laws of the United States that a Fed-
eral court will have jurisdiction, yet the mere fact that a suit is an ad-
verse suit, authorized by the statutes of Congress, is not, in and of itself,
sufficient to vest jurisdiction in the Federal courts.

THE case is stated in the opinion.

*Mr. W. B. Heyburn* for appellant.   *Mr. Lyttleton Price* was
on his brief.

*Mr. Curtis H. Lindley* for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

In *Blackburn* v. *Portland Gold Mining Company*, 175 U. S.
571, decided January 8, 1900, we held that a suit brought in
support of an adverse claim under sections 2325 and 2326 of
the Revised Statutes was not a suit arising under the laws of
the United States in such a sense as to confer jurisdiction on a
Federal court, regardless of the citizenship of the parties.   In
this case the same question is again presented, and has been
elaborately argued by counsel against the opinion we then an-
nounced.   Its importance, as well as the great ability with
which it was argued by counsel for appellee, have induced a
careful reëxamination of the question.   While it may be con-

ceded that the matter is not free from doubt, nevertheless our reëxamination has not led us to change our former views. We deem it unnecessary to restate all the reasons given in the opinion then delivered, and yet some matters may appropriately be noticed.

By the Constitution (art. 3, sec. 2) the judicial power of the United States extends "to all cases, in law and equity, arising under this Constitution, the laws of the United States" and to controversies "between citizens of different States." By article 4, s. 3, cl. 2, Congress is given "power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." Under these clauses Congress might doubtless provide that any controversy of a judicial nature arising in or growing out of the disposal of the public lands should be litigated only in the courts of the United States. The question, therefore, is not one of the power of Congress, but of its intent. It has so constructed the judicial system of the United States that the great bulk of litigation respecting rights of property, although those rights may in their inception go back to some law of the United States, is in fact carried on in the courts of the several States. It has provided that the Federal courts shall have exclusive jurisdiction of admiralty and patent litigation, and jurisdiction concurrent with the state courts of suits arising under the Constitution or laws of the United States. Rev. Stat. § 629; 25 Stat. 433, c. 866.

When in section 2326, Rev. Stat., Congress authorized that which is familiarly known in the mining regions as an "adverse suit," it simply declared that the adverse claimant should commence proceedings "in a court of competent jurisdiction." It did not in express language prescribe either a Federal or a state court, and did not provide for exclusive or concurrent jurisdiction. If it had intended that the jurisdiction should be vested only in the Federal courts, it would undoubtedly have said so. If it had intended that any new rule of demarcation between the jurisdiction of the Federal and state courts should apply, it would likewise undoubtedly have said so. Leaving the matter as it did, it unquestionably meant that the competency of

the court should be determined by rules theretofore prescribed in respect to the jurisdiction of the Federal courts. In that view, if the adverse suit were between citizens of different States, and the value of the thing in controversy exceeded $2000, then by virtue of the general provisions of the statutes the Federal courts might take jurisdiction, or, if the suit was one arising under the Constitution or the laws of the United States, and the amount in controversy was over $2000, then also the Federal courts might take jurisdiction. Conversely, it would be true that if the amount in controversy was not in excess of $2000, or if the parties were not citizens of different States, and the suit was not one arising under the Constitution or laws of the United States, the Federal courts could not take jurisdiction.

In the present case diverse citizenship does not exist. Jurisdiction must, therefore, depend upon the question whether the suit is one arising under the Constitution or laws of the United States.

We pointed out in the former opinion that it was well settled that a suit to enforce a right which takes its origin in the laws of the United States is not necessarily one arising under the Constitution or laws of the United States, within the meaning of the jurisdiction clauses, for if it did every action to establish title to real estate (at least in the newer States) would be such a one, as all titles in those States come from the United States or by virtue of its laws. As said by Mr. Chief Justice Waite, in *Gold Washing & Water Co.* v. *Keyes,* 96 U. S. 199, 203 :

" The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved. . . . Before, therefore, a Circuit Court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, in legal and logical form, such as is required in good pleading, that the suit is one which ' really and substantially involves a dispute or controversy ' as to a right which depends upon the construction or effect of the Constitution or some law or treaty of the United States."

The adverse suit (Rev. Stat. sec. 2326) is " to determine the question of the right of possession." That right may or may

not involve the construction or effect of the Constitution or a law or treaty of the United States. By sections 2319, 2324 and 2332, Revised Statutes, it is expressly provided that this right of possession may be determined by "local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States;" or "by the statute of limitations for mining claims of the State or Territory where the same may be situated." So that in a given case the right of possession may not involve any question under the Constitution or laws of the United States, but simply a determination of local rules and customs, or state statutes, or even only a mere matter of fact.

The recognition by Congress of local customs and statutory provisions as at times controlling the right of possession does not incorporate them into the body of Federal law. Section 2 of article I of the Constitution provides that the electors in each State of members of the House of Representatives "shall have the qualifications requisite for electors of the most numerous branch of the state legislature," but this does not make the statutes and constitutional provisions of the various States in reference to the qualifications of electors parts of the Constitution or laws of the United States.

On August 8, 1890, Congress enacted (26 Stat. 313, c. 728) that intoxicating liquors transported into any State or Territory "shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory," etc., and in *In re Rahrer*, 140 U. S. 545, 561, this court said:

"Congress has not attempted to delegate the power to regulate commerce, or to exercise any power reserved to the States, or to grant a power not possessed by the States, or to adopt state laws."

In *Miller's Executors* v. *Swann*, 150 U. S. 132, 136, it appeared that the State of Alabama had passed an act containing this provision: "The said Alabama and Chattanooga Railroad Company shall have the privilege and right of selling said lands or any part thereof in accordance with the acts of Congress granting the same," and it was held:

"The question is not what rights passed to the State under

the acts of Congress, but what authority the railroad company had under the statute of the State. The construction of such a statute is a matter for the state court, and its determination thereof is binding on this court. The fact that the state statute and the mortgage refer to certain acts of Congress as prescribing the rule and measure of the rights granted by the State, does not make the determination of such rights a Federal question. A State may prescribe the procedure in the Federal courts as the rule of practice in its own tribunals; it may authorize the disposal of its own lands in accordance with the provisions for the sale of the public lands of the United States; and in such cases an examination may be necessary of the acts of Congress, the rules of the Federal courts, and the practices of the land department, and yet the questions for decision would not be of a Federal character. The inquiry along Federal lines is only incidental to a determination of the local question of what the State has required and prescribed. The matter decided is one of state rule and practice. The facts by which that state rule and practice are determined may be of a Federal origin."

Inasmuch, therefore, as the " adverse suit " to determine the right of possession may not involve any question as to the construction or effect of the Constitution or laws of the United States, but may present simply a question of fact as to the time of the discovery of mineral, the location of the claim on the ground, or a determination of the meaning and effect of certain local rules and customs prescribed by the miners of the district, or the effect of state statutes, it would seem to follow that it is not one which necessarily arises under the Constitution and laws of the United States.

As against this we are met by these suggestions: First, that a corporation created by Congress has a right to invoke the jurisdiction of the Federal courts in respect to any litigation which it may have, except as specifically restricted by some act of Congress. *Osborn* v. *Bank of United States*, 9 Wheat. 738; *Pacific Railroad Removal Cases*, 115 U. S. 1. The argument of Chief Justice Marshall in support of this was, briefly, that a corporation has no powers and can incur no obligations except as authorized or provided for in its charter. Its power to do

any act which it assumes to do, and its liability to any obligation which is sought to be cast upon it, depend upon its charter, and when such charter is given by one of the laws of the United States there is the primary question of the extent and meaning of that law. In other words, as to every act or obligation the first question is whether that act or obligation is within the scope of the law of Congress, and that being the matter which must be first determined a suit by or against the corporation is one which involves a construction of the terms of its charter; in other words, a question arising under the law of Congress. But that argument is not pertinent here. The right of the contestants in an adverse suit, as we have seen, does not always call for any construction of an act of Congress. It may depend solely on local rules or customs or state statutes, and in that case does not involve a dispute or controversy " which depends upon the construction or effect of the Constitution, or some law or treaty of the United States." " In most actions concerning mining claims, the parties agree as to the proper rule of construction to be applied to the mining laws, and the controversies are usually limited to questions of fact relating to the compliance with these laws. In such cases the Federal courts have no original jurisdiction, unless there is a diversity of citizenship; but in cases arising under section twenty-three hundred and twenty-six of the Revised Statutes, the *authority* for the action is found in the legislation of Congress. Without this authority the action for the purposes avowed by the statute could not be maintained." 2 Lindley on Mines, sec. 748. A statute authorizing an action to establish a right is very different from one which creates a right to be established. An action brought under the one may involve no controversy as to the scope and effect of the statute, while in the other case it necessarily involves such a controversy, for the thing to be decided is the extent of the right given by the statute.

Again, it is said that this adverse suit is one step in the administration of the laws of the United States in respect to mineral lands, and therefore it must be presumed that Congress intended that such step should rightfully be taken in one of the courts of the United States. This suggestion was open to the

consideration of Congress when it was determining where the adverse suit should be brought, but that it did not consider it vital is evident from the conceded fact that unless the amount in controversy is over $2000, no jurisdiction attaches to the Federal court. In other words, Congress did not deem the matter of the jurisdiction of those courts so essential a part of the administration of the land laws of the United States as to vest in them jurisdiction of all such controversies, but left a large if not a major portion of them to be determined in the state courts. It evidently contemplated the fact that a controversy about a right of possession might as appropriately be decided in a state as in a Federal court, and, not prescribing in which court it should be litigated, left the matter to be determined by the ordinary rules in respect to the jurisdiction of the Federal courts.

Counsel also calls our attention to the difference in the procedure in the disposal of agricultural and mineral lands. With respect to the former all proceedings are carried on in the Land Department, and it is only after the legal title has passed by patent that inquiry is permissible in the courts, while in respect to the latter the aid of the courts is invoked before the issue of a patent and in order to determine to some extent the right thereto. Noticing this distinction he also notes the fact that a contest in respect to the validity of a patent for agricultural lands can be litigated in the Federal courts, and hence draws the inference that a contest preliminary to a patent for mineral lands, and involving the right thereto, must also be one which can be litigated in the same courts. But we think the true inference from this difference of procedure is to the contrary, because, in respect to agricultural lands, it is settled that all questions of fact are determined by the Land Department, and that after the issue of a patent only questions of law are open for consideration in the courts, and as the laws of Congress alone determine the matter of the disposal of the public lands it follows that the questions of law which are thus open for consideration are those arising under the acts of Congress. While on the other hand, as we have heretofore shown, in these adverse suits preliminary to a patent of mineral lands not merely ques-

tions of law arising under the statutes of the United States, but questions of fact and questions arising under local rules and customs and state statutes are open for consideration. The scope of the inquiry which is permissible in the two cases emphasizes the fact that in the latter case the controversy may be one not arising under the Constitution or laws of Congress.

Again, it is said that Congress has in these cases prescribed a specific rule of limitation which is ordinarily different from that obtaining under state statutes in respect to actions for the recovery of possession; that it has authorized decrees in peculiar form, some partly for and partly against each of the different parties, and also some adversely to both. Act of March 3, 1881, c. 140, 21 Stat. 505; *Richmond Mining Co.* v. *Rose*, 114 U. S. 576, 585; *Perego* v. *Dodge*, 163 U. S. 160, 167. But incidental matters such as these are not decisive, especially as confessedly the statute leaves the jurisdiction over those cases in which the matter in controversy does not exceed $2000 in value in the state Courts. This fact shows conclusively that Congress was not intending to carve out a new jurisdiction for the Federal courts, and also that it did not doubt that the state courts would carry into effect its enactments in reference to limitations and procedure.

And, finally, it is said that Congress cannot confer any jurisdiction on the state courts, that they may decline to entertain these adverse suits, and that Congress cannot compel them to do so. But here again we are met with the fact that Congress has left all controversies in respect to right of possession not exceeding $2000 in value to the state courts. It evidently proceeded upon the supposition (which is a rightful one) that, as by the express terms of the Constitution, article 6, clause 2, " This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby, anything in the constitution or laws of any State to the contrary notwithstanding," no courts, national or state, would decline to carry into effect the acts of Congress. Whether if a state court should refuse to act under these statutes the matter is one which could be corrected by error in this court, is immaterial.

If it shall appear that state courts decline to entertain such jurisdiction, and that it cannot be enforced upon them, Congress may further legislate.    Evidently, thus far in these cases, as in many others, there has been no reason to suppose that any state court would decline to enforce the laws of the United States or to carry into effect their provisions.    And as was well said by Mr. Justice Miller, in *Iron Silver Mining Co.* v. *Campbell*, 135 U. S. 286, 299 :

" The purpose of the statute seems to be that where there are two claimants to the same mine, neither of whom has yet acquired the title from the government, they shall bring their respective claims to the same property, in the manner prescribed in the statute, before some judicial tribunal located in the neighborhood where the property is, and that the result of this judicial investigation shall govern the action of the officers of the Land Department in determining which of these claimants shall have the patent, the final evidence of title, from the government."

If every adverse suit could be taken into the Federal courts, obviously in some of the larger Western States the litigation would not be " before some judicial tribunal located in the neighborhood where the property is," for in them the Federal courts are often held only in the capital or chief city of the State, and at a great distance from certain parts of the mining regions therein.

So, we conclude, as we did in the prior case, that, although these suits may sometimes so present questions arising under the Constitution or laws of the United States that the Federal courts will have jurisdiction, yet the mere fact that a suit is an adverse suit authorized by the statutes of Congress is not in and of itself sufficient to vest jurisdiction in the Federal courts.

It appears that there were two cases in the Circuit Court of Idaho, that they were there consolidated for trial, and the consolidated case taken on appeal to the Circuit Court of Appeals. Of the two original cases, No. 81, on the docket of the Circuit Court, was commenced by the appellees in that court.    The other, No. 103, was commenced by the appellant in the district court of the first judicial district of the State of Idaho in and

for Shoshone County, and by the appellees removed to the Federal court. The matters involved in the two cases were similar, and hence the consolidation. Under these circumstances, and in view of the conclusion to which we have arrived, the order will be that

> *The judgment of the United States Circuit Court of Appeals for the Ninth Circuit is reversed, and the case remanded to the Circuit Court, Northern Division, District of Idaho, with instructions to reverse its decree and enter a decree dismissing Case No. 81, and an order remanding Case No. 102 to the state court.*

MR. JUSTICE McKENNA dissented.

MR. JUSTICE WHITE did not hear the argument and took no part in the decision of this case.