William P. JOHNSON, Plaintiff,

v.

Kenneth R. SMITH dba Diversified Contract Services Inc.; Diversified Contract Services, Inc., Defendants.

No. C–85–0145 SW.

United States District Court,
N.D. California.

Order and Memorandum Remanding Action Feb. 13, 1986.

Order Imposing Sanctions Feb. 13, 1986.

Dillingham & Murphy, William F. Murphy, San Francisco, Cal., for plaintiff.

Alexander, Millner & McGee, David F. Offen-Brown, Oakland, Cal., for defendants Diversified Contract Services, Inc. and Kenneth R. Smith dba Diversified Contract Services.

## ORDER AND MEMORANDUM REMANDING ACTION

SPENCER WILLIAMS, District Judge.

Immediately prior to the scheduled trial of this case, the court *sua sponte* sought briefing on the existence of federal subject matter jurisdiction over this action. The question presented is whether any part of plaintiff's case can be said to "arise under" federal law, within the meaning of 28 U.S.C. § 1331. For the reasons indicated below, the court finds no federal jurisdiction over this matter, and therefore remands the case to the state court from which it was removed.

## BACKGROUND

Plaintiff William P. Johnson is a former managerial employee of defendant Diversified Contract Services, Inc. (DCS), a company engaged in the business of procuring and servicing food services contracts, apparently including contracts with the federal government. He was employed by DCS and its president, defendant Kenneth R. Smith, from September, 1978 until his discharge on March 23, 1984. Plaintiff thereupon filed this case, seeking relief under several state law causes of action: breach of the covenant of good faith and fair dealing implied in his employment contract with defendants; wrongful discharge in violation of public policy; breach of contract; intentional infliction of emotional distress; and violations of Cal. Labor Code §§ 201 and 203. This action was filed in California Superior Court, County of San Francisco, and was removed to this court on January 10, 1985.

In their removal petition, defendants grounded their removal of this action on plaintiff's allegation that he was wrongfully discharged in violation of a federal public policy against discrimination on the basis of handicap. Defendants asserted that "plaintiff's claim for relief requires application and interpretation of federal public policy and law concerning equal employment opportunity for the handicapped." Verified Petition for Removal at 2. Such a policy apparently derives from section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793, which provides for the employment of qualified handicapped individuals by federal contractors. Plaintiff suffers from narcolepsy, a condition he contends defendants were aware of prior to offering him employment. There is no assertion that plaintiff's other causes of action, which are all created by state law, provide a basis for federal jurisdiction, or that diversity exists between the parties.

A claim for wrongful discharge in violation of public policy is itself a creature of state law. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 840, 610 P.2d 1330, 1331 (1980) ("[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such action"). The question presently before the court is whether this incorporation of federal public policy into a state law cause of action is sufficient to confer federal subject matter jurisdiction over the case. The issue is, in essence, whether plaintiff's wrongful discharge claim comes within the language of 28 U.S.C. § 1331, which provides for federal district court jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."

## DISCUSSION

The "arising under" language of § 1331 tracks that of Art. III, § 2 of the Constitution, which permits the exercise of judicial power over "Cases ... arising under ... the Laws of the United States." The constitutional language has been construed to encompass any case in which federal law potentially forms an "ingredient." *Osborn v. Bank of United States*, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824). Although the language of § 1331 and its legislative history might be read to support the proposition that Congress intended to confer upon the district courts the full amount of jurisdiction permissible under Art. III, § 2, the Supreme Court has recently confirmed that "Art. III 'arising under' jurisdiction is broader than federal-question jurisdiction under § 1331." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 495, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Although the precise contours of the more limited grant of jurisdiction under § 1331 have been the subject of much debate since the beginning of this century, and are presently far from settled, there are certain premises that provide a starting point for analysis.

As an initial proposition, there is no question but that federally-created causes of action "arise under" federal law. *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (Holmes, J.). However, it

is equally clear that there may be federal subject matter jurisdiction over causes of action created by state law, if "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). *See, e.g., Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921) (vindication of a right under state law required interpretation of federal law).

Precisely what constitutes a "substantial" federal issue is not easily defined, perhaps due to the wide variety of contexts in which a federal issue may be presented within a state law cause of action. *See generally,* 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3562 (1984). The leading definition of "arising under" reflects this difficulty, stating simply that to confer federal jurisdiction, there must be a substantial claim founded "directly" upon federal law. Mishkin, *The Federal "Question" in the District Courts,* 53 Colum.L.Rev. 157 (1953). Indeed, it seems easier to state what is not encompassed within federal jurisdiction than to define what is included. Perhaps the process of definition may best be accomplished through such a process of exclusion, by identifying categories of cases which, although tangentially involving a federal element, have been found insufficient to confer district court jurisdiction. *See, e.g., Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (cases involving only federal "permission" to sue do not arise under federal law), *Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 507, 20 S.Ct. 726, 727, 44 L.Ed. 864 (1900) (actions to establish title to real property are not within federal jurisdiction merely because title could ultimately be traced back to United States government).

The question of substantiality appears largely to be a matter of degree, one which is difficult to discuss in the abstract. Indeed, Justice Cardozo suggested that a search for an all-encompassing definition would be "futile," calling instead for a "common-sense accommodation of judgment to kaleidoscopic situations." *Gully* at 117. This suggestion has been repeated by at least two modern commentators. *See* Cohen, *The Broken Compass: The Requirement that a Case Arise "Directly" Under Federal Law,* 115 U.Pa.L.Rev. 890, 916 (1967) and Note, *Federal Jurisdiction Over Preemption Claims: A Post-Franchise Tax Board Analysis,* 62 Texas L.Rev. 893, 922 (1984). Although such practical considerations should not take on a life of their own, they may contribute to an understanding of Congress' intent in enacting § 1331, by providing the backdrop of the coordinate state and federal court systems in which § 1331 was designed to operate.

In the present case, it is asserted that the federal policy opposed to discrimination on the basis of handicap supplies the requisite substantial federal question. Section 503 of the Rehabilitation Act, however, has been construed not to provide in itself a private cause of action for redress for discriminatory conduct. *See Fisher v. City of Tucson,* 663 F.2d 861 (9th Cir.1981), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982), *Painter v. Horne Brothers, Inc.,* 710 F.2d 143 (4th Cir.1983). Instead, complainants are limited to an administrative review procedure under the auspices of the Department of Labor. *Fisher* at 669. Thus, Congress has expressly declined to create jurisdiction in any court for claims of § 503 violations, opting instead for an entirely administrative process.

The state courts and legislatures are of course free to incorporate aspects of federal policy into state-created causes of action. And the states may naturally provide for state court jurisdiction over such claims. However, the states may not create *federal* jurisdiction over claims for which Congress has expressly declined to establish federal jurisdiction. Although it may be that state courts of general jurisdiction must hear causes of action based on federal law, *see Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), the reverse is simply not

4

the case. It is axiomatic that the federal courts are courts of limited jurisdiction, and may entertain only those suits for which jurisdiction has been expressly provided by Congress or compelled by the Constitution. *Turner v. President, Directors and Company of the Bank of North America*, 4 Dall 7, 11, 4 U.S. 7, 11, 1 L.Ed. 717 (1799). When Congress creates certain rights, and thereby establishes federal public policy, but also declines to create federal court jurisdiction to enforce those rights, the states may not step in to create such federal jurisdiction, by establishing a cause of action which incorporates or relies upon that particular federal law. Where Congress has specifically declined to establish federal jurisdiction over a class of claims, the states (or, for that matter, the litigants) may not avoid this jurisdictional barrier by relying upon a state law cause of action and the relatively liberal "arising under" test adopted in *Franchise Tax Board*.

Accepting jurisdiction over this type of case would in effect establish jurisdiction in federal court for any state-created cause of action which could trace the interests it protects to a federal policy. Because the concept of "public policy" is ill-defined, and because Congress has seen fit to legislate with respect to numerous aspects of our national life, the logical extension of such a principle would result in the flooding of the federal courts with what are thoroughly state law causes of action. In enacting § 1331 as a more limited grant of jurisdiction than is possible under the Constitution, Congress in all likelihood did not intend such a result. In creating the lower federal courts and vesting in them jurisdiction over all cases "arising under" federal law, Congress presumably intended to provide for the uniform interpretation and application of federal law. That interest would simply not be served by including within federal jurisdiction cases in which Congress specifically did not intend to create a private cause of action. Under such circumstances, the incorporation of a federal policy within a state law cause of action is insufficient to give rise to a sufficiently "substantial" or "direct" federal issue. This sort of case, although tangentially involving a "federal" element, should not fall within federal district court jurisdiction.

■ Plaintiff's wrongful discharge cause of action thus does not "arise under" federal law, within the meaning of § 1331, and accordingly, federal jurisdiction is lacking over this case. The case must therefore be REMANDED to the Superior Court for the City and County of San Francisco.

Certain costs concerning defendants' removal of this action, and attorneys' fees relating to defendants' conduct once in this court, are awarded in a separate order filed concurrently herewith.

## ORDER IMPOSING SANCTIONS

On November 29, 1984, plaintiff William P. Johnson commenced this action in the Superior Court of the State of California, City and County of San Francisco, Civil No. 830–395, alleging wrongful termination, breach of an employment compensation contract, and several other state law claims. Defendants removed to this court on January 10, 1985, asserting that plaintiff's claim for relief required "application and interpretation of federal public policy and law concerning equal employment for the handicapped."

On December 9, 1985, the court indicated its intention to remand this case to state court pursuant to 28 U.S.C. § 1447(c) for lack of federal subject matter jurisdiction, and determined that sanctions under Rule 11 of the Fed.R. of Civ.P. as well as costs under Section 1447(c) should be awarded for the conduct of defendants' counsel during the course of the pretrial proceedings in this action. The basis for the court's decision to remand is set out in a separate order filed concurrently herewith. This order explains briefly the basis for the court's decision to award sanctions against defendants.

■ Defendants' deposition of plaintiff Johnson commenced on August 29, 1985, and continued for eight days. Defendants

subsequently asked the court's permission to serve plaintiff with additional interrogatories, claiming that the questions had not been covered in the deposition. An examination of the deposition transcripts, however, revealed repetitive questioning, concerning matters of doubtful relevance, and extensive coverage of the subjects contained in the interrogatories. Defendants' request for additional interrogatories was denied. The court finds that both the extended deposition and the subsequent request for additional interrogatories were undertaken for the purposes of harassment and were intended to cause unnecessary delay and needless expense. The sanctions awarded below include attorney's fees for days six, seven and eight of plaintiff's deposition, and the fees incurred in responding to defendants' request for additional interrogatories.

Defendants sought and received an order shortening time to bring a partial summary judgment motion on November 18, 1985, the date originally scheduled for commencement of the trial in this action. The court finds that defendants' motion was frivolous, designed to harass plaintiff and divert him from trial preparation, and brought without reasonable inquiry into the facts and the law.

Defendants made several arguments in support of their motion, each of which was completely without merit. First, defendants argued that the alleged oral employment agreement was barred by the statute of frauds, ignoring the existence of several written documents containing specific references to the agreement and to its terms. Second, defendants argued that plaintiff was an "at will" employee and could be discharged without a showing of just cause despite the fact that defendant Smith, in his deposition, stated specifically that the company's just cause termination policy applied to the plaintiff.

Third, defendants argued that plaintiff was barred by the doctrine of collateral estoppel from relitigating the issue of the reason for his discharge, citing a California Supreme Court decision in a criminal case.

That decision, however, was limited specifically to its facts—facts which are entirely dissimilar to the facts of the present case. *See People v. Sims,* 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982). Finally, defendants argued that because plaintiff failed to take advantage of the company's internal grievance procedure, he was barred from taking his dispute to court. Once again, the cases cited by defendants were factually dissimilar, and dealt with issues totally separate from those presented by the case at hand.

Rule 11 requires that an attorney undertake some inquiry into both facts and law before a pleading or motion is filed; the level of inquiry is tested against a standard of reasonableness under the circumstances. The court finds that the conduct of defendants' counsel during the pretrial proceedings in this action was characterized by a reckless lack of inquiry into the facts and the law, and by an abusive approach to the adjudicative process. Such conduct clearly was unreasonable under the circumstances. Accordingly, the court determines that it is appropriate to award plaintiff attorney's fees in the amount of $5,328.00 as sanctions for the above-described misconduct. In arriving at this figure, the court has considered carefully the twelve factors enumerated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976).

Under 28 U.S.C. § 1447(c), if a district court finds that a case was removed "improvidently and without jurisdiction," the court has the discretion to award costs. As noted above, defendants removed this action asserting that it presented issues to be resolved under federal law. When asked by the court to brief the basis for federal jurisdiction in the present action, defendants argued *against* jurisdiction, asserting that the only possible basis for federal jurisdiction (29 U.S.C. § 793) contained no private right of action, and moved to dismiss plaintiff's "federal" claims and to remand the state law causes of action.

**6**

First, plaintiff's complaint does not characterize his claim as one under section 793. Inasmuch as the plaintiff is the master of his own complaint, defendants' attempt to recharacterize it is irrelevant for jurisdictional purposes. But even if the court were to accept defendants' re-characterization, counsel for defendants should have been aware that wholly insubstantial federal claims cannot supply federal subject matter jurisdiction. *See, e.g., Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974). With respect to the present case, the decision in *Fisher v. City of Tucson,* 663 F.2d 861, 867 (9th Cir.1981), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982), makes it crystal clear that section 793 itself could not be the basis for a federal cause of action. Defendants, given the opportunity, have failed to identify an arguable basis for their removal petition.

This court finds that defendants' removal of this action to federal court, in light of their subsequently advanced "justification" for removal, merits an award of costs. The court finds that the amount of plaintiff's costs directly attributable to the removal is $1,934.95. This court finds further, however, that plaintiff shall be awarded only half this figure, an amount of $967.48, due to his failure to attempt to remand this action to state court. The amount of costs previously awarded by the Clerk on January 13, 1986 is hereby vacated.

In addition to the costs and attorney's fees awarded above, defendants have been directed to pay the jury costs for the first day of the scheduled trial, an amount of $720, which already has been remitted to the court.

IT IS SO ORDERED.