156 F.3d 432
 13 Communications Reg. (P&F) 952
 FOXHALL REALTY LAW OFFICES, INC., on behalf of itself and
all others similarly situated, Plaintiff-Appellant,
v.
TELECOMMUNICATIONS PREMIUM SERVICES, LTD., d/b/a TPS Call
Sciences, Defendant-Appellee.
 Docket No. 97-9147.
 United States Court of Appeals,
Second Circuit.
 Argued May 7, 1998.
Decided Sept. 28, 1998.
 
 Robert J. Schechter, New York City (Schechter & Nimkoff, LLP, New York City, of counsel), for Plaintiff-Appellant.
 Warren Anthony Fitch, Washington, DC (Robert V. Zener, Swidler & Berlin, Chartered, Washington, DC, on the brief), for Defendant-Appellee.
 Before: McLAUGHLIN and PARKER, Circuit Judges, and SPATT*, District Judge.
 PARKER, Circuit Judge:
 
 
 1
 Like the Fourth Circuit, and the other circuit courts that have considered the issue before us, we too reach "the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by" a federal statute, the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, Pub.L. No. 102-243, 105 Stat. 2394 (1991) (the "TCPA"). See International Science & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1150 (4th Cir.1997) ("International Science "). Indeed, we do so for substantially the same reasons stated in International Science. Accordingly, we affirm the decision of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., Judge ) dismissing the case for lack of subject matter jurisdiction. See Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Servs., Ltd., 975 F.Supp. 329 (S.D.N.Y.1997).
 
 I. BACKGROUND
 
 2
 Foxhall Realty Law Offices, Inc. ("Foxhall") alleges that on November 5, 1996, the defendant-appellee, Telecommunications Premium Services, Ltd. ("TPS"), transmitted to it by facsimile an unsolicited advertisement in violation of the TCPA. TPS is a privately-held telecommunications company which provides a "personal assistant" service to its customers. A TPS customer using this service is assigned a single telephone number, and the customer's incoming calls are routed to any one of several other telephone numbers used by the customer. TPS allegedly purchased the facsimile number list containing Foxhall's number from a marketing services firm in New York. The list contained approximately 66,000 facsimile numbers in the New York metropolitan tristate area.
 
 
 3
 Foxhall filed this putative class action suit on behalf of itself and all New Yorkers who allegedly received "junk" facsimile advertisements from TPS. Foxhall claims that the advertisement it received was sent without its prior permission and was therefore a violation of 47 U.S.C. § 227. Section 227(b)(1)(C) prohibits the "use [of] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." Section 227(b)(3) provides for a private right of action in the following terms:
 
 
 4
 A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
 
 
 5
 (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
 
 
 6
 (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
 
 
 7
 (C) both such actions.
 
 
 8
 If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.
 
 
 9
 47 U.S.C. § 227(b)(3).
 
 
 10
 Following International Science, the district court held that the TCPA creates a private right of action for violations of § 227(b)(1)(C), but that state courts have exclusive jurisdiction over such causes of action under the terms of § 227(b)(3). We agree.
 
 II. DISCUSSION
 
 11
 We note at the outset that since the Fourth Circuit decision in International Science, the Fifth and Eleventh Circuits have analyzed 47 U.S.C. § 227(b)(3) and have both reached the same conclusion. See Nicholson v. Hooters of Augusta, Inc., 136 F.3d 1287, 1289 (11th Cir.1998); Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 509 (5th Cir.1997); see also Murphey v. Lanier, 997 F.Supp. 1348 (S.D.Cal. 1998) (finding exclusive state court jurisdiction under 47 U.S.C. § 227(b)(3)). Only the United States District Court for the Southern District of Indiana has found that there is concurrent federal and state jurisdiction over private rights of action brought under the TCPA. See Kenro, Inc. v. Fax Daily, Inc., 904 F.Supp. 912, 915 (S.D.Ind.1995), on reconsideration, 962 F.Supp. 1162 (S.D.Ind.1997) (denying motion to reconsider earlier decision based on Fourth Circuit authority reaching opposite conclusion).
 
 
 12
 In determining whether Congress intended to confer federal jurisdiction over private rights of action brought under the TCPA, our "analysis begins with the text of the provision in question." New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The language of the TCPA at issue here is the line that reads: "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action for violation of the TCPA's prohibition on unsolicited facsimile advertising. 47 U.S.C. § 227(b)(3) (emphasis added). As the Fourth Circuit observed in International Science, although the use of the word "may" in federal statutes conferring jurisdiction on federal courts has not been held to confer exclusive jurisdiction on those courts, see, e.g., Tafflin v. Levitt, 493 U.S. 455, 460-61, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (holding that the RICO statute which provided that any person "may sue ... in any appropriate United States district court" for violations of the statute did not "oust a state court from concurrent jurisdiction over the cause of action"), use of the word "may" to confer jurisdiction on state courts has a different effect. The difference derives from the fact that state courts are courts of general jurisdiction and are accordingly presumed to have jurisdiction over federally-created causes of action unless Congress indicates otherwise, whereas federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction. See Sheldon v. Sill, 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). As the Fourth Circuit in International Science explained:
 
 
 13
 When ... the permissive authorization extends only to courts of general jurisdiction, that authorization cannot confer jurisdiction on unmentioned courts of limited jurisdiction, which require a specific grant. If a federal statute permissively authorizes suit in federal court, that authorization does not of necessity preclude suit in state courts of general jurisdiction, which are presumed competent unless otherwise stated. But the contrary assertion cannot be true. If a statute authorizes suit in state courts of general jurisdiction through the use of the term "may," that authorization cannot confer jurisdiction on a federal court because federal courts are competent to hear only those cases specifically authorized.... In light of this difference between the federal and state courts, it is meaningful that Congress explicitly mentioned only state courts in 47 U.S.C. § 227(b)(3) because under usual circumstances, mentioning state courts is unnecessary to vest them with concurrent jurisdiction.
 
 
 14
 106 F.3d at 1151-52 (citations omitted). See also Chair King, Inc., 131 F.3d at 512 (reasoning that since "the TCPA's express grant of jurisdiction would not have been necessary if Congress had intended to confer concurrent jurisdiction upon state and federal courts" and "[b]ecause a statute should be construed in a way that gives meaning and effect to all the provisions, it appears the specific authorization of state court jurisdiction was intended as more than a confirmation of concurrent jurisdiction") (citations omitted). We agree with, and adopt, the reasoning of the Fourth and Fifth Circuits that Congress intended to confer exclusive state court jurisdiction over private rights of action under the TCPA.
 
 
 15
 Foxhall contends, however, that the specific grant of federal jurisdiction seemingly absent from § 227(b)(3) is supplied by the general "federal question" jurisdiction statute, 28 U.S.C. § 1331, which provides:The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 
 
 16
 According to Foxhall, since the TCPA's language does not expressly carve out an exception to this general jurisdiction statute, it cannot do so implicitly. However, Foxhall's argument misunderstands the nature of the federal question jurisdiction statute.
 
 
 17
 Section 1331 is based on Article III, Section 2, of the Constitution of the United States, which provides that the judicial power of the United States shall extend, inter alia, to "cases, in law and equity arising under the Constitution, laws, and treaties of the United States." U.S. Const. Art. III, § 2. However, the federal question jurisdiction conferred on district courts by § 1331 "has been construed more narrowly than its constitutional counterpart." Chair King, Inc., 131 F.3d at 510 (citing Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 495, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) and Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 379-80, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959)). Thus, while it is generally true that an action that "arises under" a federal statute will properly be brought in federal district court, that is not always the case. See International Science, 106 F.3d at 1154. "Inferior federal courts' 'federal question' jurisdiction ultimately depends on Congress's intent as manifested by the federal statute creating the cause of action." Chair King, Inc., 131 F.3d at 511 (citations omitted). See also International Science, 106 F.3d at 1154-55 ("It is clear ... that § 1331 is a general federal-question statute, which gives the district courts original jurisdiction unless a specific statute assigns jurisdiction elsewhere.") (citing numerous federal statutes which vest jurisdiction exclusively in courts other than federal district courts). In our view, the text of the TCPA indicates that Congress intended to assign private rights of action exclusively to courts other than the federal district courts.
 
 
 18
 Foxhall argues that there is an alternative interpretation of the Congressional intent in the TCPA's use of the word "may" that allows concurrent jurisdiction and is therefore consistent with the grant of federal question jurisdiction in § 1331. Foxhall asserts that because concurrent state court jurisdiction is ordinarily presumed to exist unless expressly excluded, it was necessary for the TCPA to provide an "opt-out" provision for the states if Congress had wanted the state courts to be able to choose whether or not to enforce the statute. In Foxhall's words, "[t]he TCPA's private action does not confer jurisdiction on state courts, ... but specifically provides that state courts need not exercise their jurisdiction if there are 'laws or rules of a court of a State' that provide otherwise."
 
 
 19
 In our view, this argument erroneously assumes that Congress intended to create a federal cause of action for violations of the TCPA. Even if Foxhall's interpretation of the text is plausible, the statutory scheme of the TCPA and the Communications Act of 1934, and the legislative history and purpose of the TCPA support the contrary interpretation. Like the Fourth Circuit, we find it significant that Congress expressly provided for exclusive federal jurisdiction over actions brought by states for violations of the TCPA on behalf of their residents. See 47 U.S.C. § 227(f)(2) ("the district courts of the United States ... shall have exclusive jurisdiction over all civil actions brought under this subsection"); International Science, 106 F.3d at 1152 ("We find it significant that in enacting the TCPA, Congress wrote precisely, making jurisdictional distinctions in the very same section of the Act by providing that private actions may be brought in appropriate state courts and that actions by the states must be brought in the federal courts."). Similarly, elsewhere in the Communications Act of 1934, which the TCPA amends, Congress provided explicitly for concurrent jurisdiction when it so intended. See id. (citing sections of the Communications Act).
 
 
 20
 Foxhall contends that it is error to rely on other parts of the Communications Act which expressly provide for concurrent jurisdiction because the TCPA was not part of the same bill. We disagree. The Senate Report indicates that the bill was referred to the Senate Committee "to amend the Communications Act of 1934" and we can safely assume that the drafters reviewed the Act which the TCPA was amending in drafting the statute. Further, when considering amendments to legislation, "we must read the Act as a whole ... [and should not] ignore the 'common sense, precedent, and legislative history,' " FTC v. Jantzen, Inc., 386 U.S. 228, 235, 87 S.Ct. 998, 18 L.Ed.2d 11 (1967) (citations omitted), and in so doing may properly consider related legislation. See United States v. Standard Oil Co., 384 U.S. 224, 226, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966).
 
 
 21
 Finally, the legislative history and purpose of the TCPA support the view that Congress intended to confer exclusive jurisdiction on state courts over private rights of action. The stated purposes of the bill were to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automated dialers." S.Rep. No. 178, 102nd Cong., 1st Sess. 1, 1 (1991), U.S. Code Cong. & Admin. News at 1968, 1968. Although over forty state legislatures had enacted measures restricting unsolicited telemarketing, these measures had limited effect because states do not have jurisdiction over interstate calls. Id. at 3. The author of the Senate Bill, S. 1462, Senator Hollings, indicated that the purpose of the private right of action was to:
 
 
 22
 make it easier for consumers to recover damages from receiving these computerized calls [and to] allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court.
 
 
 23
 137 Cong. Rec. S. 16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Foxhall argues that because the private right of action was a "relatively late edition" to the TCPA, see International Science, 106 F.3d at 1152, Senator Hollings would have explained that, in Foxhall's words, "the provision has no precedent in the history of our nation, and that never before had a federal right of action been consigned exclusively to state court," had the TCPA been intended to confer exclusive state court jurisdiction. First, we disagree that exclusive state court jurisdiction over a federal cause of action is unprecedented. See Shoshone Mining Co. v. Rutter, 177 U.S. 505, 511, 20 S.Ct. 726, 44 L.Ed. 864 (1900) (no federal question jurisdiction over suits authorized by federal statute to determine mining claims); Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 814 n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); International Science, 106 F.3d at 1154. Moreover, even if unusual, that does not mean that Senator Holling's failure to explicitly mention that the action was intended to be enforced only in state court is significant, when, as the Fourth Circuit observed, "the clear thrust of [Senator Holling's] statement was consistent with the bill's text that state courts were the intended fora for private TCPA actions." International Science, 106 F.3d at 1153. Accordingly, we are unpersuaded by Foxhall's argument.
 
 
 24
 Foxhall next contends that the interpretation adopted by the Fourth Circuit would lead to absurd results because private parties could sue in state court while state attorneys general could sue in federal court for the same violations, and there is no means for transferring or consolidating such cases. However, the courts have proved well equipped to handle similar situations, such as where more than one suit is commenced in different jurisdictions between the same parties and involving the same issues. See, e.g., Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 423 (2d Cir.1965) (applying the principle that the first suit should have priority absent a showing of balance of convenience in favor of the second action to suits commenced in different districts over same issue of patent infringement). Accordingly, we do not believe that Foxhall's concerns for judicial administration are warranted.
 
 
 25
 Foxhall also argues that exclusive state jurisdiction creates due process and equal protection concerns and that the TCPA should be read to avoid such a result. The argument is that, if some states "opt out" of the TCPA, the citizens of those states will not enjoy the private right of action under the TCPA, while citizens of other states will. In rejecting this argument in International Science, the Fourth Circuit explained that the clause in § 227(b)(3) that states "if otherwise permitted by the laws or rules of court of a State," does not condition the substantive right to be free from unsolicited faxes on state approval. 106 F.3d at 1156. Rather, the clause recognizes that states may refuse to exercise the jurisdiction authorized by the statute. To the extent that a state decides to prevent its courts from hearing private actions to enforce the TCPA's substantive rights, the existence of a private right of action under the TCPA could vary from state to state. As the Fourth Circuit explained, however:
 
 
 26
 That inequality ... touches only a statutory permission to enforce privately the same substantive rights which both the state and the federal government can enforce in federal court through other mechanisms. Moreover, because the inequality arises from a classification that is not based on a fundamental right or impermissible characteristic such as race, religion, or national origin, out review of the statutory provision under the Equal Protection Clause is narrow.
 
 
 27
 Id.
 
 
 28
 Foxhall argues that the Fourth Circuit's reliance on "other mechanisms," namely enforcement by state attorneys general, does not alleviate the inequality problem because state attorneys general have discretion as to whether or not to bring a suit. However, this criticism does not prevent the legislative classification from being "rationally related" to its legitimate purpose--authorizing private actions to stop unsolicited faxing while mindful of not overburdening state and federal courts and respecting states' judgments about when their courts are overburdened. Further, we reject Foxhall's claim that a higher degree of scrutiny than rational basis review is warranted because, in Foxhall's words, we are dealing with "the fundamental right of equal access to the courts and to federal protections." This argument places the cart before the horse. The TCPA does not provide a "federal protection" but a permissive authorization to bring actions in state courts, and the "unequal" access is to a right that does not trigger strict scrutiny under our constitutional tests.
 
 III. CONCLUSION
 
 29
 We have carefully considered Foxhall's remaining arguments and find them to be without merit. For the foregoing reasons, we affirm the decision of the district court.
 
 
 
 *
 The Honorable Arthur D. Spatt, of the United States District Court for the Eastern District of New York, sitting by designation