KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting:
My colleagues conclude that the plaintiffs have alleged a cause of action under 42 U.S.C. § 1983. Ordinarily the existence vel non of a federal cause of action determines a federal court’s subject-matter jurisdiction. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). But this rule knows one “rare exception,” Mims v. Arrow Fin. Servs., LLC, — U.S. -, 132 S.Ct. 740, 748 n. 8, 181 L.Ed.2d 881 (2012), and I believe this case falls within it. In my view the district court was without subject-matter jurisdiction and I would therefore affirm its dismissal order on that ground.
The district court held that it had subject-matter jurisdiction under 28 U.S.C. § 1331 which provides that “district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States”. Duberry v. Dist. of Columbia, 106 F.Supp.3d 245, 260 & n. 14 (D.D.C. 2015). The plaintiffs do not assert an alternative basis for its jurisdiction so I do not consider others. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (“burden of establishing [subject-matter jurisdiction] rests upon the party asserting jurisdiction”). The District of Columbia (District) likewise does not challenge the district court’s jurisdictional holding but we have a sua sponte duty to verify jurisdiction. Arbaugh v. Y&H Corp., 546 *1058 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).
Section 1331 is known as the “general federal-question jurisdiction” statute. Mims, 132 S.Ct. at 747. “Although the language of § 1331 parallels that of the ‘arising under’ clause of Article III” of the Constitution, it is well established that “Article III ‘arising under’ jurisdiction is broader than federal question jurisdiction under § 1331.” Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 494-95, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); see also Franchise Tax Bd., 463 U.S. at 8 n. 8, 103 S.Ct. 2841. In other words, section 1331 bestows jurisdiction on a smaller class of cases than does the Constitution. Reducing to a formula what claims are (and what claims are not) provided for is something of a puzzle. “The most familiar” construction of section 1331’s “arising under” language is that “[a] suit arises under the law that creates the cause of action.” Franchise Tax Bd., 463 U.S. at 8-9, 103 S.Ct. 2841 (emphasis added) (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)). This rule, also known as “Justice Holmes’ test” in recognition of the American Well Works author, states that where “federal law creates the cause of action,” section 1331 provides federal question jurisdiction. Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, 809 n. 5, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).
Although the Justice Holmes’ test re-' solves jurisdiction under section 1331 in “the vast majority of cases,” id. at 808, 106 S.Ct. 3229, it does not answer the issue completely. For instance, a claim “may arise under federal law ‘where the vindication- of a right under state law necessarily turn[s] on some construction of federal law.’ ” Id. at 808, 106 S.Ct. 3229 (emphasis added) (quoting Franchise Tax Bd., 463 U.S. at 9, 103 S.Ct. 2841).[1] Thus, absence of a federal cause of action is not fatal and some courts have observed Justice Holmes’ test is not “useful for ... the exclusion for which it was intended.” T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964) (Friendly, J.). Although the test is “more useful” as a rule of inclusion, see Franchise Tax Bd., 463 U.S. at 9, 103 S.Ct. 2841; see also Merrell Dow, 478 U.S. at 814 n. 12, 106 S.Ct. 3229 (Holmes test is “usualfty] reliable] ... as an inclusionary principle”), that notion “is not without its exceptions,” Rogers v. Platt, 814 F.2d 683, 688 (D.C. Cir. 1987).
For example, the Supreme Court “has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction because of the overwhelming predominance of state-law issues.” Merrell Dow, 478 U.S. at 814 n. 12, 106 S.Ct. 3229 (emphasis added). Probably the most prominent example is Shoshone Mining Co. v. Rutter, 177 U.S. *1059 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), in which case a federal statute authorized suit brought to “determine the question of the right of possession” to “mineral lands.” Id. at 507, 510, 20 S.Ct. 726. The existence of the right of possession, however, was to “be determined by ‘ “local customs of rules of miners ... ” ’ or ‘ “by the statute of limitations for mining claims of the state or territory where the same may be situated.” ’ ” Id. at 508, 20 S.Ct. 726. Because “[t]he recognition by Congress of local customs and statutory provisions as at times controlling the right of possession does not incorporate them into the body of Federal law,” a suit to “determine the right of possession may not involve any question as to the construction or effect of the ... laws of the United States”; on the contrary, it may involve no more than “determination of the meaning and effect of certain local rules ... or the effect of state statutes.” Id. at 508-09, 20 S.Ct. 726. Although the case included the “right of possession,” id. at 507, 20 S.Ct. 726 (emphasis added), and its corresponding federal recognition via “title from the [federal] government,” id. at 513, 20 S.Ct. 726, the Court found no subject matter jurisdiction. It concluded that notwithstanding a right may have “its origin in the laws of the United States,” it may not, in the language of section 1331, “necessarily [involve a claim] arising under ... laws of the United States.” Id. at 507, 20 S.Ct. 726 (emphasis added). If a federal statute specifies that state law governs the existence and scope of a right, and compliance with state law is the only disputed issue, no federal question arises and therefore no subject-matter jurisdiction exists under section 1331. Cf. id. at 507, 20 S.Ct. 726 (“The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws [of the United States].” (emphasis added)).
Assuming, as the majority concludes, that section 1983 establishes a cause of action to enforce the LEOSA, i.e., that it “creates [a] claim for relief,” Mims, 132 S.Ct. at 748 n. 8, I nonetheless believe that, under Shoshone, the district court lacked subject-matter jurisdiction. The majority’s conclusion establishes only that the LEOSA and section 1983 combine to “au-thoriz[e] an action to establish a right”— no more, no less. Shoshone, 177 U.S. at 510, 20 S.Ct. 726. But state law governs whether “a right” exists and, for subject-matter jurisdiction to arise, “the [federal] Act” — here, the LEOSA — must also “supply the governing law.” Mims, 132 S.Ct. at 748 n.8. Although the LEOSA may do so in some cases, cf. Shoshone, 177 U.S. at 513, 20 S.Ct. 726 (“these suits may sometimes so present questions arising under the Constitution or laws of the United States that the Federal courts will have jurisdiction” (emphasis added)), it does not do so here.
The plaintiffs seek “an Order directing the District ... to certify and/or acknowledge Plaintiffs as retired law enforcement officers for purposes of the [LEOSA],” Corr. Am. Compl. 17, which, in this case, turns on whether, while serving as corrections officers, they had a “statutory power[ ] of arrest” under D.C. law, see Maj. Op at 1050; 18 U.S.C. § 926C(c)(2). No one may carry a concealed weapon under the LEOSA unless he “had statutory powers of arrest” before separation from service. 18 U.S.C. § 926C(c)(2). Because the plaintiffs were D.C. corrections officers, D.C. law provided the authority under which they exercised their powers. Accordingly, whether they possess any right under the LEOSA depends on a “determination of local rules and customs, or state statutes, or even only a mere matter of fact.” Shoshone, 177 U.S. at 508, 20 S.Ct. 726. In support of their authority the plaintiffs *1060 allege that D.C. Code § 24-405[2] provided them a “statutory power[ ] of arrest.” The District responds that section 24-405 confers authority to execute only a limited type of warrant, not a “statutory power[ ] of arrest,” relying on, inter alia, a D.C. Court of Appeals decision interpreting “arrest” to require an officer’s independent decision regarding whether to charge a suspect with a criminal offense. Appellee Br. 22-23 (citing In re M.E.B., 638 A.2d 1123 (D.C. 1993)). Plainly, then, at least to me, this suit “involve[s] no controversy as to the scope and effect of’ federal law, rather, the merits outcome turns on application of “local rules” and “the effect of state statutes.” Shoshone, 177 U.S. at 509, 510, 20 S.Ct. 726.
My colleagues offer two additional bases for subject-matter jurisdiction. First, they emphasize the Congress’s “use[ ] [of] categorical language in the ‘notwithstanding’ clause of subsection (a),” Maj Op. 1052; see 18 U.S.C. § 926C(a) (“Notwithstanding any other provision of the law of any State ... an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm.”) and posit that the District took “unlawful action,” Maj. Op. 1055, to deny the plaintiffs their alleged right. The plaintiffs claim error in the District’s decision that they do not meet the state law condition precedent that the LEOS A requires — i.e., that they do not possess a “statutory power[ ]. of arrest,” 18 U.S.C. § 926C(c)(2). The “notwithstanding” proviso is not implicated. In any event, the proviso itself is limited to “a qualified retired law enforcement officer,” which prerequisite is determined by reference to ■ D.C. law. Id. § 926C(a) (emphasis added).
In addition, my colleagues conclude — as part of their Blessing[3] inquiry — that the District misinterpreted the term “statutory powers of arrest,” see Maj. Op. 1052-53, specifically, that it “reevaluat[ed] or redefined] [the] federal requirement[ ],” id. at Í055; see also id. at 1057 (District has no power “to revise the statutory definition”), concluding that the existence of a state “statutory power of arrest” is a federal question, id. at 1055 (“right defined by federal law”). I do not see how. As they concede, the inquiry whether “the officer had a statutory power of arrest” is “answer[ed]” by “the officer’s personnel records and the statutes in effect before the officer retired,” id. at 1053, in other words, by “state statutes, or even only a mere matter of fact,” Shoshone, 177 U.S. at 508, 20 S.Ct. 726. They apparently also believe that the definition of “arrest” is itself found in federal law and that the term should be construed “broadly,” Maj. Op. 1052-53, but in doing so they offer no definition at all. The fact is that the plaintiffs’ arrest power can only arise under local law and, in my view, whether the plaintiffs possessed the arrest power under the D.C. definition of that term decides this case. In any event, “[t]he inquiry along Federal lines,” to the extent there is one, “is only -incidental to a determination of the local question of what the state has ... prescribed.” Shoshone, 177 U.S. at 509, 20 S.Ct. 726.[4]
*1061 Finally, Blessing illustrates what this case is not about, at least for the purpose of subject-matter jurisdiction. 520 U.S. 329, 117 S.Ct. 1353. Blessing involved a federal program that provided funds to states operating federally-qualified child support enforcement programs. Id. at 333, 117 S.Ct. 1353. A participating state was required to “structure” its implementing agency in a particular way, staff its units at federally mandated levels, and “set up computer systems that met numerous federal specifications” to “maintain detailed records.” Id. at 334, 117 S.Ct. 1353. The plaintiffs alleged that Arizona deprived them of child support services because the state agency’s “structural defects” made them ineligible to receive the federal program’s benefits. Id. at 337, 117 S.Ct. 1353. In other words, they alleged that Arizona had not complied with federal' requirements. By contrast, here the plaintiffs do not claim that the District’s implementation of the. LEOSA is lacking nor that the District has failed to meet federal requirements. Instead, they claim that D.C. misinterpreted the authority of its own former law enforcement officers under D.C. law, as the LEOSA instructs. Appellant Br. 19 (arguing that the District wrongly concluded “that correctional officers do not have ‘law enforcement status and arrest authority’ under D.C. law”); see also Corr. Am. Compl. ¶ 61; 18 U.S.C. § 926C(c)(2).
I note that some regard subject-matter jurisdiction under section 1331 to be, at bottom, a question of congressional intent and that Shoshone, because it involved a local land dispute, can be explained in this way. See Merrell Dow, 478 U.S. at 810, 814 n. 12, 106 S.Ct. 3229 (section 1331 “require[s] sensitive judgments about congressional intent” and Shoshone was suit with insufficient “federal interest”); see also Shoshone, 177 U.S. at 506, 20 S.Ct. 726 (“[t]he question ... is not one of the power of Congress, but of its intent”). To me, it makes perfect sense to likewise conclude that the Congress intended a state court to determine whether one of its retired law enforcement officers is “qualified,” that is, whether he possessed certain state law authority, see 18 U.S.C. § 926C(c)(l), (2), (3), so that he can obtain a state-issued certification, id. § 926C(d), a condition precedent of LEOSA’s authorization to carry a concealed weapon.
For the foregoing reasons, I respectfully dissent.

. In the case that established this exception, the plaintiff shareholder sought to "prevent the directors” of a "Missouri corporation” from "doing an act ... alleged to be contrary to their duty ... [under] laws of Missouri.” Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 214, 41 S.Ct. 243, 65 L.Ed. 577 (1921) (Holmes, J., dissenting). The corporation sought to "invest[] the funds of the company in farm loan bonds issued by [federal authorities] under authority of [a federal statute]." Id. at 195, 41 S.Ct. 243 (majority opinion). The plaintiff alleged that the statute was unconstitutional, giving rise to a state-law breach of duty claim. Id. at 195-96, 41 S.Ct. 243. Because the decision "depend[ed] upon the determination” of the "constitutional validity of an act of Congress,” the majority found subject-matter jurisdiction. Id. at 201-02, 41 S.Ct. 243. Justice Holmes, citing his American Well Worlcs opinion, dissented, declaring that "a suit cannot be said to arise under any other law than that which creates the cause of action,” and ultimately concluding that Smith’s claim arose from Missouri law. Id. at 214-15, 41 S.Ct. 243 (Holmes, J., dissenting).

.D.C. Code § 24-405 provides that "[a]ny officer of the District of Columbia penal institutions ... is authorized and required to execute” a warrant "for the retaking of” "a prisoner [who] has violated his parole” "by taking such prisoner and returning or removing him to the penal institution of the District of Columbia from which he was paroled or to such penal or correctional institution as may be designated by the Attorney General of the United States.”

. Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

. My colleagues submit that the District "acknowledged in official Departmental identification cards that appellants ... had a power of arrest” but that the District "change[d] its *1061 position” “only when appellants ... sought to exercise their concealed-carry right.” Maj. Op. 1056 (citing plaintiffs’ complaint). The full extent of the District’s purported "ack-nowledg[ment]” is the fact that, before retiring, the corrections officers carried identification cards that referenced D.C. Code § 24-405. Whatever the significance of the identification card, it is irrelevant in determining subject-matter jurisdiction. My colleagues believe that the District got the local law question wrong — pointing to the identification card as evidence. But whether the District misinterpreted its own former officers' authority is not a federal question, no matter how badly it erred. In concluding otherwise they misread not only the LEOSA but also Shoshone’s reach.